Elzie Deshawn COLEMAN, Plaintiff,

v.

NEWBURGH ENLARGED CITY SCHOOL DISTRICT, Peter Copeletti, Individually and as Principal of Newburgh Free Academy, and Board of Education of the City of Newburgh School District, Defendants.

No. 04 CIV. 3370(SCR).

United States District Court, S.D. New York.

May 17, 2004.

**448**

Mark C. Rushfield, Shaw & Perelson, LLP, Highland, NY, for Petitioner.

Mark Craig Rushfield, Shaw & Perelson, LLP, Highland, NY, for Respondents.

## MEMORANDUM ORDER AND DECISION

ROBINSON, District Judge.

### I. BACKGROUND:

On or about April 20, 2004, Elzie DeShawn Coleman (the "Plaintiff") was involved in an altercation with another student, N.H.[1], at the Newburgh Free Academy ("NFA"). The Plaintiff was removed from the school, arrested by the Newburgh Police Department[2] and was immediately suspended from school for five days pending a disciplinary hearing. On April 22, 2004, the Plaintiff was provided with notice of the disciplinary hearing, to be held April 28, 2004, and a statement of the charges against him (the "Statement of Charges").[3]

The April 28th disciplinary hearing, took place before a designated hearing officer, Edmund V. Caplicki, Jr. ("Mr. Caplicki"). At the conclusion of that hearing, the Defendants withdrew subparagraph (e) of Charges I and II. The Plaintiff made a motion to dismiss both Charge I and Charge II. Mr. Caplicki dismissed Charge II in its entirety, but did not dismiss the remaining subsections of Charge I. After the completion of the hearing, and summations by counsel, Mr. Caplicki considered the Statement of Charges and found that the Plaintiff (a) had engaged in a physical altercation with another student on school grounds, (b) a crowd grew as a result of that altercation, (c) a series of subsequent altercations broke out in the school between other students, and (d) intervention by the Newburgh Police Department was required. Based upon Mr. Caplicki's findings, Dr. Annette Saturnelli, the Acting Superintendent of Schools in Newburgh, (the "Superintendent"), extended the Plaintiff's suspension for an additional five days pending the Committee on Special Education's (the "CSE") manifestation hearing and the penalty phase of the disciplinary hearing, both of which were scheduled for May 3, 2004.

On May 3, 2004, a manifestation hearing was held to ascertain whether the Plaintiff's conduct was a manifestation of his learning disability (the "Manifestation Hearing"). Following that hearing the CSE concluded that the Plaintiff had the ability to control his behavior and that his conduct was not a manifestation of his disability. (Manifestation Hearing Tran-

---

**1.** The actual name of the other student is irrelevant and to protect that student's privacy, this Court will only refer to that student as "N.H."

**2.** The criminal charges that were brought against the Plaintiff were resolved on April 28, 2004.

**3.** The Statement of Charges consisted of Charge I and Charge II, each with five subsections (a)-(e).

script, Page 87). Following the completion of the Manifestation Hearing, the penalty phase of the disciplinary hearing was held on May 3rd. On or about May 4, 2004, Mr. Caplicki issued a written Report and Recommendation (the "Report and Recommendation") recommending that the Plaintiff be (a) suspended for the balance of the 2003–2004 school year, with the opportunity to receive home tutoring and instruction; (b) allowed to attend 2004 summer school and return to school for the 2004–2005 school year, if additional credits are needed to earn his high school diploma, and (c) placed on probationary status if he attends the summer program or returns to school during the 2004–2005 school year.[4] (Report and Recommendation, Page 7). Also on May 4th, the Superintendent wrote a letter to the Plaintiff, which adopted in whole the findings of fact, conclusions and penalty recommendations of the Report and Recommendation and determined that the Plaintiff should be suspended from school for the remainder of the 2003–2004 school year. The Superintendent decided that the Plaintiff would receive his individualized education program in an Interim Alternative Education Setting ("IAES"), as recommended by the CSE.[5]

The Plaintiff filed his initial complaint against the Newburgh Enlarged School District (the "School District"), Peter Copeletti ("Principal Copeletti"), and the Board of Education of the City of Newburgh School District (the "Board of Education"; collectively, the School District, Principal Copeletti and the Board of Education are referred to herein as, the "Defendants") in New York State Supreme Court in Orange County on April 30, 2004. The Plaintiff's complaint included an application for a temporary restraining order to allow the Plaintiff to return to classes at NFA and be permitted to participate in extracurricular activities. An argument was to be held before the Honorable Stewart Rosenwasser on May 3, 2004, but the Defendants elected to remove the Plaintiff's action to Federal District Court. On May 6, 2004, the Plaintiff brought an order to show cause with a request for a temporary restraining order and/or preliminary injunction to this Court. An argument was held before this Court on that date. Additionally, on May 6, 2004, the Plaintiff filed a notice of appeal of the Superintendent's decision, which appeal was held before the Board of Education on May 10, 2004. The following day, this Court was notified by the Plaintiff's counsel that the Plaintiff's appeal had been rejected. On May 12, 2004, this Court received the written decision from the Board of Education stating that the Plaintiff's appeal had been denied. The Board of Education decided that the "determination of guilt" and the "penalty meted out" in the Report and Recommendation, as adopted by the Superintendent, were proper and that the Plaintiff's appeal should be denied in its entirety. (May 12, 2004 Board Decision, Page 3).

In addition to the proceedings that have been held in connection with the instant matter, during the argument before this Court, the Defendants represented that a

---

4. The discipline recommended by the Report and Recommendation is exactly what the school district had requested. (Report and Recommendation, Page 6 and 7). The Plaintiff counsel had requested that the Plaintiff's suspension be limited to the ten days that he had already served. (*Id.* at 6)

5. The IAES services, which the Defendants claim they have offered to the Plaintiff, include 5 hours of home teaching daily (2 hours for English, 2 hours for Science, 1 hour for Economics) and 1 hour with a Prescriptive Learning Resource Special Education Teacher.

separate hearing was scheduled to commence on or about May 11, 2004 to consider whether the Plaintiff, separate and apart from the instant incident and suspension, is a danger to the school community and to prevent him from returning to NFA in the event of a "fluke" decision by a court; presumably this Court.[6] While it is impossible for this Court to ascertain the attitudes and predispositions of the Defendants, it was clear at the argument before this Court that the attorneys for the Defendants were hostile toward the Plaintiff and his counsel. This Court was not privy to the prior proceedings, except for its review of the transcripts, and does not fully understand the origin of anger manifested by the Defendants' counsel. A lawyer's obligation is to be a zealous advocate for his or her client; however, in this case, the Defendant' counsel's anger towards the Court and opposing counsel were surprising. While the conduct of the Defendants' counsel plays no part in this Court's decision, the animus that was displayed causes this Court great concern as to whether or not the Plaintiff could get a fair hearing from the Defendants. As no decision has been reached with respect to this "dangerousness" hearing, this Court does not address it any further at this time.

## II. *ANALYSIS:*

### A. **Exhaustion of Administrative Remedies:**

The first argument made by the Defendants is that the Plaintiff has not exhausted his administrative remedies prior to bringing his action in state court. This issue must be addressed as a threshold matter because if the Court finds that the Plaintiff should have done so, and did not,

the Court lacks subject matter jurisdiction to adjudicate this matter.

In general, the requirement that a plaintiff exhaust his or her administrative remedies "prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes." *Heldman v. Sobol,* 962 F.2d 148, 159 (2d Cir.1992). "Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Hoeft v. Tucson Unified Sch. Dist.,* 967 F.2d 1298, 1303 (9th Cir.1992). However, the Second Circuit has recognized that the exhaustion requirement does not apply "in situations in which exhaustion would be futile because administrative procedures do not provide adequate remedies." *Heldman* at 158; *see also* H.R.Rep. No. 99–296, at 7 (1985); *Mrs. W. v. Tirozzi,* 832 F.2d 748, 756 (2d Cir.1987). The burden of demonstrating futility rests with the party seeking to avoid the exhaustion requirement. *Polera v. Bd. of Educ.,* 288 F.3d 478, 489 n. 8 (2d Cir.2002).

There is no dispute that the Plaintiff has not exhausted his administrative remedies. Therefore, in the case at bar, the burden is on the Plaintiff to show that exhaustion of the administrative appeals process would be futile. The Defendants claim that the Plaintiff should not be entitled to bring this action in court, state or federal, because he has not exhausted his

---

**6.** Regardless of the determination made at a manifestation hearing, a disabled student may be suspended for up to 45 days if he or she is shown to be a "dangerous student." (8 N.Y.C.R.R. § 201.8).

administrative remedies. More particularly, the Defendants claim that the Plaintiff must pursue the following administrative remedies, prior to initiating legal action: (1) appeal the Superintendent's decision to the Board of Education[7]; and (2) appeal the Board of Education's decision to the New York State Commissioner of Education (the "Commissioner").[8] However, this stance only considers an appeal under § 3214. The Plaintiff has challenged other aspects of the Defendants' conduct. More particularly, the Plaintiff argues that the findings of the CSE at the Manifestation Hearing were incorrect and that the Plaintiff's conduct was a manifestation of his disability. An appeal of that decision would have to be held before an "impartial hearing officer," which, even if taken on an expedited basis, would take at least two weeks. (See 8 N.Y.C.R.R. 200.11). If that appeal were unsuccessful, before the Plaintiff would be considered to have exhausted his administrative remedies, he would have to appeal to the State Commissioner of Education. (Id.) This appellate process, first to the impartial hearing officer, and then to the Commissioner, most likely would not be completed before the end of the school year. Further, as indicated below, the determination, which was reached at the Manifestation Hearing, was reached without conducting a functional behavior assessment of the Plaintiff and his disability. By the time such an assessment is performed, and the Plaintiff takes the necessary appellate steps thereafter, his claims will almost certainly be mooted by the passage of time. Therefore, it would be futile for him to pursue administrative remedies with respect to his claim of an errant finding at the Manifestation Hearing.

The Plaintiff was suspended from school beginning on April 21, 2004. Therefore, as of the date and time of the oral argument before this Court the Plaintiff had suffered twelve (12) days of suspension. During that argument, counsel for the Defendants represented that they were not aware of the last day of the 2003–2004 school year, but thought there to be approximately twenty-seven (27) school days remaining. As of the date of this decision, the Plaintiff has been suspended from school for approximately nineteen (19) days and there are only approximately twenty (20) school days remaining. Any further delay pending the administrative remedies recommended by the Defendants would only increase the time of the suspension and exhaust the remaining school days. Accordingly, this Court finds that (a) it would be futile for the Plaintiff to exhaust his administrative remedies, and (b) subject matter jurisdiction exists for this Court to adjudicate this matter. Having found that subject matter jurisdiction exists, this Court must turn to the merits of the Plaintiff's action.

## B. Preliminary Injunction:

### 1. Standard of Review:

The standard for obtaining a preliminary injunction in the Second Circuit is well established. In order to be successful, "[a] party seeking a preliminary injunction must show: (1) irreparable harm

7. The Plaintiff did appeal to the Board of Education, who is a named Defendant, and was represented by Shaw & Perelson at the appeal, albeit by a different attorney from that firm. The Plaintiff's appeal was denied by the Board of Education. The Board of Education did not make any independent findings and merely adopted the conclusions of the Report and Recommendation, which had previously been adopted by the Superintendent.

8. Following the denial of his appeal by the Board of Education, the Plaintiff filed an appeal with the Commissioner. This appeal remains pending; however, it is unclear when that appeal will be heard and/or decided.

in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Random House, Inc. v. Rosetta Books LLC,* 283 F.3d 490, 491 (2d Cir. 2002). The harm at issue must be imminent and the movant must show that it is likely to suffer irreparable harm if equitable relief is denied. *JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir. 1990). Additionally, when, as in the case at bar, "the moving party seeks an injunction that will affect government action, the injunction should be granted only if the moving party meets the more rigorous 'likelihood of success' standard." *Beal v. Stern,* 184 F.3d 117, 122 (2d Cir.1999).

Accordingly, in order for the Plaintiff to prevail in the instant matter, he must show that: (1) he will suffer irreparable harm in the absence of an injunction; (2) a likelihood of success on the merits; and (3) a balance of the hardships tip in his favor.

### 2. *Irreparable Harm:*

■ During the May 6, 2004 conference before this Court, the Defendants argued that the only reason the Plaintiff sought reinstatement was for extracurricular, specifically athletic, purposes. While the Court has no doubt that the prospect of missing competitions may be driving the immediacy of the Plaintiff's need for injunctive relief, it does not follow that this is his only reason for wanting to be reinstated. The Defendants' claim that the **only reason** the Plaintiff is seeking reinstatement is to participate in track meets is unsupported on the record before this Court. In the absence of support on the record, the Defendant's presumption that because the Plaintiff is a gifted athlete he is only interested in athletics is troubling.

The Plaintiff does argue that if the suspension is not lifted, he will be harmed by missing many track and field competitions, which he has trained for all his life. Further, the Plaintiff argues that he has an opportunity to qualify for the 2004 Summer Olympics, which opportunity will be lost if he is not permitted to compete in the upcoming events. The Defendants argue that the Plaintiff does not have a constitutional right to participate in extracurricular activities. *See Mazevski v. Horseheads Central School District,* 950 F.Supp. 69, 72 (W.D.N.Y.1997). Therefore, the Defendants conclude that a suspension from extracurricular activities does not, by itself, constitute irreparable harm. Even if the *Mazevski* decision was binding on this Court, which it is not, this Court need not reach the question of whether or not the Plaintiff's suspension from extracurricular activities alone constitutes an irreparable harm.

Through his counsel's statements at oral argument and the written submissions and supporting documentation submitted to this Court, the Plaintiff has articulated a number of other imminent harms, which would constitute irreparable harm in the absence of injunctive relief. First, there is no dispute that the Plaintiff has a learning disability and was receiving special education prior to being suspended from school. Additionally, the parties agree that despite his disability, the Plaintiff was on pace, prior to his suspension, to graduate from NFA. The Defendants claim that the IAES, which has been offered to the Plaintiff, will provide the same quality of education and special help that he would receive at NFA. The Plaintiff's counsel argued that the Plaintiff would be particularly and adversely affected by the home schooling because he is academically challenged and needs the extra help from the special education teachers. (May 3, 2004 Penalty Phase Transcript, Page 12).

There is not sufficient evidence in the record to show that the quantity and quality of the Plaintiff's education, and his chances of graduating from NFA, would not be harmed by the IAES.

Second, the Plaintiff has represented, and the Defendants have not disputed, that he has been offered full scholarships to several universities.[9] These offers are not hypothetical and not potential, they are actual scholarship offers. In connection with his application that was submitted to New York State Supreme Court, and later attached to his preliminary injunction application to this Court, the Plaintiff submitted an affidavit (the "Plaintiff's Affidavit"). In the Plaintiff's Affidavit, he recognizes the importance of a scholarship for more than athletic purposes, stating that: "I am hopeful that through the scholarship, I will get the help I require to permit me to obtain my college degree." (Plaintiff's Affidavit, ¶ 22). Further, the Plaintiff alleges that his college career and his opportunity to go to college are being "severely undermined" by the Defendants' actions. (*Id.* at ¶ 21). A college scholarship is a protected property interest because it advances an opportunity for a student to attend a college or university that he or she would otherwise be unable to attend or afford to attend. In the case at bar, the Plaintiff's chance of obtaining a scholarship and his opportunity to attend college, are jeopardized by the Defendants' actions in connection with the current incident and the resulting suspension.

This Court finds that a continued suspension, and accompanying preclusion from extracurricular activities, would result in imminent and irreparable harm by jeopardizing (a) the quantity and quality of the Plaintiff's education, (b) the Plaintiff's

chance to graduate from high school, (c) the Plaintiff's chance for a college scholarship, and (d) the Plaintiff's opportunity to attend college. Accordingly, the first requisite element for a preliminary injunction has been satisfied.

### 3. *Likelihood of Success on the Merits:*

The second element that the Plaintiff must satisfy in order to make the requisite showing for a preliminary injunction is "a likelihood of success on the merits". The Plaintiff has challenged a number of aspects of the disciplinary process and Report and Recommendation that resulted in his suspension. More particularly, the Plaintiff contends that both the procedural process of the disciplinary hearing and the substantive conclusion of the Report and Recommendation were erroneous.

### a. *Procedural Issue:*

While the Plaintiff makes numerous allegations about procedural improprieties during the disciplinary hearing process, this Court focuses on the allegations concerning the Manifestation Hearing. As indicated above, the Manifestation Hearing was held on May 3, 2004. Following the Manifestation Hearing, the Defendants determined that the Plaintiff's learning disability did not play a part in the April 20, 2004 incident. Therefore, the Defendants concluded that the disciplinary process, which would otherwise be applicable to a disabled student, did not apply to the Plaintiff. As discussed above, the Plaintiff disputes this determination. The Defendants' conclusion on the manifestation issue overlooks two critical issues: (1) the cause of the April 20th incident and (2) the lack of information before the CSE

---

**9.** The Plaintiff states that he has been offered scholarships from Louisiana State University, the University of Tennessee, Baylor University and Mississippi State University.

prior to making the determination in question.

First, with respect to the causation of the April 20th incident, the Plaintiff stated during the Manifestation Hearing that N.H., the other student involved in the altercation with the Plaintiff, "said a couple of things about my learning disability, like you're PLC." (Manifestation Hearing Transcript, Page 52). Significantly, Agatha Bucci, the Chairperson of the CSE, testified that:

> PLC is Newburgh's acronym for self contained special education class. It stands for prescriptive learning class. *And having taught in this district for 31 years, I know the one sure way when kids want to pick on each other, they will say you're PLC, and that's you know fighting words many times, or at least argumentative words many times.*

(*Id.* at 53). The Defendants did not produce any testimony contradicting the Plaintiff's assertion that N.H. taunted him by calling him "PLC." In the absence of evidence to the contrary, this Court must assume, for the purpose of this decision, that such taunting did occur. As such, the Plaintiff's disability was directly involved in the altercation that transpired. This connection between the disability and the conduct leading to the fight was treated dismissively and was not adequately addressed by the Defendants during the Manifestation Hearing. (See e.g. *id.* at 60–63).

Second, although the CSE concluded that the Plaintiff's behavior was not related to his disability, no functional behavioral assessment was conducted prior to that determination. (Manifestation Hearing Transcript, Page 88–89). This Court finds it significant that the CSE recommended that a functional behavioral assessment be performed after the conclusion of the Manifestation Hearing. The fact that the CSE recommended performance of an assessment casts doubt on the conclusion at the Manifestation Hearing that the altercation with N.H. was not a manifestation of the Plaintiff's disability.[10] At the very least, the CSE's determination at the Manifestation Hearing should be subject to greater scrutiny in the absence of such an assessment.

Based upon the conclusion of the Manifestation Hearing (that the Plaintiff's conduct was not a manifestation of his disability) the Defendants did not afford the Plaintiff the due process, pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400–1490, ("IDEA") and New York State Law, 8 N.Y.C.R.R. 200, 201 et seq., that he would have been entitled to if there had been a determination that the conduct was a manifestation of the Plaintiff's disability. This Court finds that the Defendants' determination following the Manifestation Hearing is insufficiently supported by the evidence in the record. While this Court makes no specific finding as to whether or not the disability was a factor, this Court does find that there is a likelihood that the Plaintiff would be successful on the merits of his claim challenging that determination.

b. *Substantive Issue:*

■ The Plaintiff contends that in addition to the procedural violations during the disciplinary hearing, his substantive due process rights were violated by the conclusion of the Report and Recommendation, which conclusion was adopted by the Su-

---

**10.** There is no evidence in the record regarding whether or not that assessment has been conducted to date.

perintendent and then affirmed on appeal by the Board of Education. There is no dispute that the Plaintiff was involved in an altercation with another student, N.H., on April 20, 2004 at NFA. Likewise, there is no dispute that other altercations ensued between other students, which subsequent alterations did not involve the Plaintiff, and that the school day was disrupted.

In the "Analysis of Testimony" section of the Report and Recommendation, Mr. Caplicki describes the testimony he relied on in preparing his Report and Recommendation, which included the testimony of Timothy Underhill, Gary Van Voorhis, Randolph Rodriguez, Joselito Wrancher and Principal Copeletti. (Report and Recommendation, Page 3–4). Further, in the "Findings of Fact and Determination" section, the Report and Recommendation states that it is "based upon the credible testimony presented by two (2) teachers, several staff members and an administrator of NFA who were all eyewitnesses to the events of April 20, 2004[.]" (*Id.* at 4). However, not one of those individuals witnessed the beginning of the altercation and not one of them offered any testimony as to how the altercation between the Plaintiff and N.H. started. Those individuals were only able to establish that the Plaintiff was involved in an altercation with N.H., which no one disputes, and that other incidents broke out later that day. Notwithstanding that incomplete testimonial record, the Report and Recommendation based it's conclusion that the Plaintiff was "guilty" of the violations set forth in the Statement of Charges on the fact that the Plaintiff participated in an incident and that subsequent incidents occurred, which required law enforcement intervention. Specifically, the Report and Recommendation concluded, in the "Disciplinary Recommendation" Section, that:

> The participation in a physical altercation with another student while on school property during a school day is totally unacceptable behavior. The testimony clearly established that the entire education schedule of NFA was interrupted on April 20, 2004 by the conduct of Elzie DeShawn Coleman.

(Report and Recommendation, Page 6).

The Report and Recommendation relies on three factors in reaching its conclusion that the Plaintiff should be suspended from school for the remainder of the school year: (1) the fact that the Plaintiff was involved in an altercation on April 20, 2004; (2) several other altercations, none of which involved the Plaintiff, occurred after the initial incident; and (3) the school day was disrupted by these incidents. Although the Report and Recommendation justifies its decision on these factors, not one of these factors is controlling on the issue of the Plaintiff's culpability. With respect to the second and third elements, the Plaintiff should not be held responsible for the independent actions of third parties. There is absolutely no evidence in the record before this Court that the Plaintiff solicited, encouraged or otherwise caused the ensuing behavior of other students at NFA on April 20, 2004.

Rather than being held responsible and punished for the actions of others, the Plaintiff should be judged on his own conduct. With that standard in mind, this Court must address the Report and Recommendation's "Findings of Fact and Determination" that the Plaintiff "became involved in a physical altercation with another student." (Report and Recommendation, Page 4–5). The Report and Recommendation makes absolutely no finding of fact that the Plaintiff was responsible for the altercation that occurred between him and N.H. Instead, the Report and Recommendation bases its guilty verdict

on the mere fact that an alteration occurred.

With respect to how the altercation started, the only testimony on the record before this Court was given by the Plaintiff during the Manifestation Hearing. Specifically, the Plaintiff stated that the events transpired as follows: (1) he was walking down the hallway with his track coach and the coach went one way and the Plaintiff another (Manifestation Hearing Transcript, Page 57); (2) after they separated, N.H., the other student involved in the altercation with the Plaintiff, walked up to the Plaintiff and started arguing with him (*Id.*); (3) N.H. (a) called the Plaintiff a "faggot," (b) said that the Plaintiff "slept with his girl," and (c) called the Plaintiff "PLC" (*Id.* at 58); and (4) after N.H. called the Plaintiff "PLC", the two continued to argue and then the Plaintiff turned to walk away, but N.H. said something else and the Plaintiff turned around and N.H. grabbed him and the two started fighting (*Id.* at 58–59). Further, the Plaintiff said N.H. was yelling that the Plaintiff was PLC and that he (the Plaintiff) did not want anyone to know that he was in the special education classes.[11] (*Id.* at 60). In the Plaintiff's Affidavit he stated that he became involved in the altercation only after he was attacked by N.H. (Plaintiff's Affidavit, ¶ 13).

This Court does not know, and cannot determine from the record before it, whether the Plaintiff's account of the events is accurate; however, the Report and Recommendation does not cite any testimony or facts, which would support an opposite conclusion. Instead, the Report and Recommendation uses passive language that the Plaintiff "was involved" and

"participated" in an altercation. During the conference before this Court, counsel for the Defendants, albeit begrudgingly, conceded that if the Plaintiff was physically threatened by another student, he first should have attempted to retreat, but if that was not possible, he had the right to defend himself. Accordingly, by the Defendants' counsel's own admission, if the version of facts set forth above is true, the Plaintiff acted within his rights and should not have been suspended. However, the Report and Recommendation found that the Plaintiff was in violation of the Code of Conduct and suspended him for the remainder of the school year; without making any finding with respect to responsibility or culpability. In the absence of a finding of culpability, this Court finds that there is a likelihood that the Plaintiff would have success on the merits of his claims against the Defendants.

The Report and Recommendation and the disciplinary process leading up to it did not make sufficient findings of fact. More particularly, (a) the Defendants concluded that the Plaintiff's disability did not affect his conduct without sufficient information and assessment, and (b) there was no finding that the Plaintiff was responsible or culpable for the events that transpired on April 20, 2004. Accordingly, this Court finds that the Plaintiff has a likelihood of success on the merits with respect to his challenge of his suspension from school and extracurricular activities. The Plaintiff has satisfied the second requisite element for a preliminary injunction.

### 4. *Balance of the Hardships:*

██ There is no dispute that the Defendants have an interest in protecting the

---

11. The Defendants countered by arguing that the Plaintiff is not PLC, to be in PLC one needs to spend six hours and thirty minutes a day with a special education teacher, which the Plaintiff does not. (Manifestation Hearing Transcript, Page 60–61). However, the Plaintiff indicated that students do not see a difference if "you're in it for a second, you're in it." (*Id.* at 61).

safety of the students and staff at NFA and it is not the province of this Court to instruct the Defendants on how to accomplish that goal. However, as detailed above, the Plaintiff has been suspended indefinitely without any finding of culpability on his part. That suspension has resulted in a disabled student-athlete being kept out of school, including his special education classes, which suspension, separate and apart from the extracurricular activities he will miss, jeopardizes (a) the quantity and quality of the Plaintiff's high school education; (b) the Plaintiff's chance of graduating from high school, (c) the Plaintiff's opportunity for a college scholarship, (d) the Plaintiff's opportunity to attend college, and (e) the Plaintiff's prospects of competing in the 2004 Summer Olympics for the United States Olympic Team. To the contrary, the Defendants' submissions, including without limitation the Report and Recommendation, the Superintendent's Letter and the Board of Education's Decision, do not make any showing that (a) the Plaintiff was ***responsible*** for the incidents that occurred, (b) that the suspension is proportionate in response to what occurred, or (c) that the suspension is necessary to prevent further acts of violence at NFA. Accordingly, this Court finds that a balance of the hardships weigh heavily in favor of the Plaintiff.

## III. *CONCLUSION:*

As set forth more fully above, this Court finds that (a) in the absence of injunctive relief, the Plaintiff will suffer irreparable harm, (b) the Plaintiff has a likelihood of success on the merits of his claims against the Defendants, and (c) a balance of the hardships weigh heavily in favor of the Plaintiff. Therefore, this Court grants the Plaintiff's motion for a preliminary injunction and orders that the Plaintiff immediately be reinstated at NFA and that he be allowed to attend classes and to participate in extracurricular activities.

It is so ordered.