Judge STRAUB concurs in the judgment of the Court and files a separate concurring opinion.
JOHN M. WALKER, JR., Circuit Judge:
In this case, a disabled child was subject to discipline by his school district that entitled him to several administrative remedies under the Individuals with Disabilities Education Act (“IDEA”), 20 U.S.C.A § 1400 et seq., but the exhaustion of which would likely have prohibited him from graduating with his class and, incidently, kept him from participating in extracurricular activities. The principal question we are presented with, simply stated, is whether, under the circumstances of this case, he should have been excused from exhausting his administrative remedies under the IDEA and allowed to go directly into federal court so that, if successful, he could enjoin the school district’s disciplinary action without missing graduation.
Plaintiff Elzie Deshawn Coleman, a child with a disability, filed an action alleging that Newburgh Enlarged City School District, Peter Copeletti, individually and as principal of Newburgh Free Academy High School (“NFA”), and the Board of Education of the City of Newburgh School District (collectively, “Defendants”) violated his rights under the IDEA. In particular, Coleman challenged the disciplinary process that led to his suspension from NFA and moved for a preliminary injunction ordering Defendants to reinstate him immediately for the pendency of his administrative appeals. Defendants, in opposing the motion, argued that the district court lacked subject matter jurisdiction because Coleman had failed to exhaust the administrative remedies available to him under the IDEA. The district court for the *201 Southern District of New .York (Stephen C. Robinson, Judge) rejected Defendants’ argument on the basis that exhaustion would be futile because Coleman was scheduled to graduate less than two months following the disciplinary hearing and granted Coleman’s motion in an opinion and order dated May 17, 2004. See Coleman v. Newburgh Enlarged City Sch. Dist., 319 F.Supp.2d 446 (S.D.N.Y.2004). Soon thereafter, the district court awarded Coleman $28,431.52 in attorneys’ fees as a prevailing party under the IDEA’S fee-shifting provision, 20 U.S.C. § 1415(i)(3)(B).
On appeal, Defendants contend, inter alia, that the district court’s award of attorneys’ fees was improper because its determination in Coleman’s underlying action that exhaustion would be futile was error. We agree. The district court should have dismissed Coleman’s complaint. We therefore reverse its award of attorneys’ fees.
BACKGROUND[2]
Coleman attended NFA as a disabled student pursuant to an individualized education program (“IEP”) implemented under the IDEA. See 20 U.S.C. § 1414(d). On April 20, 2004, Coleman, an accomplished high school track athlete, was involved in an altercation with another student at NFA. He was removed from the school, arrested by the Newburgh Police Department,[3] and promptly suspended for five days pending a disciplinary hearing.
Upon prior notice, the disciplinary hearing was held on April 28, 2004 before a designated hearing officer, Edmund V. Ca-plicki, Jr. Caplicki found that (a) Coleman had engaged in a physical altercation with another student on school grounds; (b) a crowd grew as a result of that altercation; (c) a series of subsequent altercations broke out in the school between other students; and (d) intervention by the New-burgh Police Department was required. Based upon Caplieki’s findings, Dr. Annette Saturnelli, the acting superintendent of schools, extended Coleman’s suspension for five more days pending the Committee on Special Education’s (“CSE”) hearing as to whether Coleman’s conduct was a manifestation of his disability and the penalty phase of the disciplinary hearing before Caplicki.
On May 3, 2004, the CSE held its “manifestation hearing”' and determined that Coleman’s conduct was not attributable to his disability. From this determination, Coleman had a right to a series of administrative reviews—first to a due process hearing, see 20 U.S.C. § 1415(k)(3); 8 N.Y.C.R.R. § 201.11(a)(3), before an impartial hearing officer (“IHO”) appointed by the local board of education, see 8 N.Y.C.R.R. § 200.5(j), and then to a second hearing before a state review officer (“SRO”) of the New York Education Department, see 8 N.Y.C.R.R. § 200.5(k); see also 20 U.S.C. § 1415(g). Moreover, Coleman enjoyed the right to have the due process hearing conducted on an expedited basis. 20 U.S.C. § 1415(k)(4)(B) (“[T]he State or local educational agency shall arrange for an expedited hearing, which shall occur within 20 school days of the date the hearing is requested and shall result in a determination within 10 school days after the hearing.”); 8 NY.C.R.R. § 201.11(c) (“An expedited due process hearing shall be completed within 15 business days of receipt of the request for a hearing,” except in the event the IHO *202 grants a specific extension of time at the request of a party, and a decision shall be rendered “within five business days after the last hearing date, but in no event later than 45 calendar days after receipt of the request for a hearing, without exceptions or extensions.”)-[4] But these administrative reviews, as it turns out, were never pursued.
Caplicki then heard the penalty phase of the disciplinary hearing and, on May 4, 2004, issued a written report and recommendation (the “Report and Recommendation”) that Coleman be (a) suspended for the balance of the 2003-2004 school year with the opportunity to receive home tutoring and instruction; (b) allowed to attend 2004 summer school and return to school for the 2004-2005 school year if additional credits were needed to earn his high school diploma; and (c) placed on probationary status if he attended the summer program or returned to school during the 2004-2005 school year. The same day, Dr. Saturnelli wrote a letter to Coleman in which she adopted the Report and Recommendation in full and ordered that Coleman be suspended from school for the remainder of the 2003-2004 school year and receive his IEP in an interim alternative education setting (“IAES”).[5]
Coleman sued Defendants in New York State Supreme Court on April 30, 2004. His complaint sought a temporary restraining order to allow him to return to classes at NFA and participate in extracurricular activities. Defendants removed Coleman’s action to federal court. On May 6, Coleman renewed his request for a temporary restraining order and/or preliminary injunction, and the district court heard argument.
Also on May 6, Coleman appealed Dr. Saturnelli’s guilt and penalty decisions to the Board of Education. The Board upheld the actions of Dr. Saturnelli and rejected Coleman’s appeal to that body in its entirety. Coleman’s counsel reported this development to the district court on May 11.
Defendants moved to dismiss Coleman’s complaint on the basis that the district court lacked subject matter jurisdiction because Coleman had failed to exhaust all available administrative remedies including, for instance, appealing further to an IHO and then to an SRO. The district court found that it had jurisdiction over the litigation because exhaustion would be futile under the circumstances — namely, that before Coleman could fully exhaust, he would miss graduating with his class and, incidentally, participating in extracurricular activities. The district court then granted Coleman’s motion for a preliminary injunction and ordered that he “immediately be reinstated at NFA and that he be allowed to attend classes and to participate in extracurricular activities.” Coleman, 319 F.Supp.2d at 457. Defendants appealed to this court and sought an emergency stay. On June 3, 2004, a panel of this court denied the stay, finding that Defendants failed to demonstrate irreparable harm. Within a few weeks of that decision, on June 24, Coleman graduated from NFA. It followed that Defendants, by stipulation and agreement with Coleman, *203 withdrew their appeal as moot on July 7, 2004.
On July 12, days after Defendants’ decision to withdraw their appeal, Coleman moved in the district court pursuant to 20 U.S.C. § 1415(f)(3)(B) for attorneys’ fees in the amount of $54,218.03. Defendants opposed the application through a Fed. R.Civ.P. 12(b)(1) and (6) cross-motion to dismiss the complaint. The district court awarded Coleman $28,431.52 in attorneys’ fees. This appeal followed.

DISCUSSION

Defendants argue that the district court erred in awarding attorneys’ fees to Coleman because the complaint should have been dismissed for lack of subject matter jurisdiction based on a failure to exhaust administrative remedies. See, e.g., McGinty v. New York, 251 F.3d 84, 100 (2d Cir.2001) (“It ... follows that where we lack subject matter jurisdiction, we also lack jurisdiction to award attorney’s fees.”).
I. The Jurisdictional Label
Before turning to the merits, we pause to consider whether this appeal should be characterized as one involving jurisdictional limitations.
The IDEA’S so-called exhaustion requirement is grounded in 20 U.S.C. § 1415(i)(2)(A), which provides a cause of action to those parties who are “aggrieved” by a “final” decision of either an impartial due process hearing officer, if the state does not have an appeals process, or the state educational agency, if it does. We have routinely stated that the IDEA’S exhaustion requirement is jurisdictional. See, e.g., Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 483 (2d Cir.2002) (“A plaintiffs failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction.”); Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199 (2d Cir.2002) (“The plaintiffs failure to exhaust administrative remedies ordinarily deprives this court of subject matter jurisdiction over any IDEA claims.”).
Recently, however, the Supreme Court has admonished lower courts to more carefully distinguish between jurisdictional rules and mandatory elaims-processing rules, see Eberhart v. United States, 546 U.S. 12, 16, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam) (‘“Clarity would be facilitated’ ... ‘if courts and litigants used the label “jurisdictional” not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court’s adjudicatory authority.’”) (quoting Kontrick v. Ryan, 540 U.S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004)), the latter being subject to waiver and forfeiture, see id. at 19, 126 S.Ct. 403 (“These claim-processing rules thus assure relief to a party properly raising them, but do not compel the same result if the party forfeits them.”). After Kontrick and Eberhart, we have been equivocal in our discussion of the IDEA’S exhaustion requirement, acknowledging our statement in Polera that the failure to “exhaust IDEA administrative remedies deprive[s][a] court of subject matter jurisdiction” but also referring to the IDEA’S exhaustion requirements as the defendants’ “non-exhaustion defense,” in a case where we contemplated, but did not decide, whether those requirements are subject to waiver. Handberry v. Thompson, 436 F.3d 52, 60 (2d Cir.2006) (citing Polera, 288 F.3d at 488-90); see also Paese v. Hartford Life Accident Ins. Co., 449 F.3d 435, 444 n. 2 (2d Cir.2006) (stating that we have yet to reach a clear conclusion on whether the failure to exhaust administrative remedies under the IDEA is an affirmative defense, not a ju *204 risdictional bar) (citing Handberry, 436 F.3d at 60).[6]
But we are not forced to decide whether our precedent, which labels the IDEA’S exhaustion requirement as a rule affecting subject matter jurisdiction rather than an “inflexible claim-processing” rule that may be waived or forfeited, remains good law after Kontrick and Eberhart because there can be no claim of waiver or forfeiture here. Defendants have consistently challenged the district court’s exhaustion ruling throughout this litigation. We took a similar position in United States v. Moreno-Rivera, 472 F.3d 49, 50 n. 2 (2d Cir.2006) (per curiam), where we noted that Kontrick and Eberhart cast doubt on our precedent that considers the time limits of Fed. R.App. P. 4(b) as jurisdictional, but declined to revisit the question because the government had properly raised the untimely nature of defendant’s notice of appeal in its motion to dismiss.[7] In Zhong v. United States Dep’t of Justice, 480 F.3d 104, 107 (2d Cir.2007), however, we observed that Eberhart provided reason “for us to treat as not jurisdictional, though mandatory (and hence waivable) the requirement of issue exhaustion” provided in 8 U.S.C. § 1252(d) and decided to so hold because the question was “determinative of the asylum case before us.”[8]
That Defendants are challenging the district court’s exhaustion determination by way of an appeal from an award of attorneys’ fees does not impede our review of the issue. The IDEA’S fee-shifting provision “limits judicial discretion to 8 award attorney’s fees to ‘any action or proceeding brought under 9 this subsection.’ ” W.G. v. Senatore, 18 F.3d 60, 64-65 (2d Cir.1994) (quoting 20 U.S.C. § 1415(e)(4)(B), the predecessor to § 1415(i)(3)(B)). The phrase “brought under this subsection” encompasses the administrative procedures and civil actions provided in 20 U.S.C. § 1415(i) and requires an independent examination of whether the underlying action was properly brought, which in turn requires an assessment of whether the district court’s exhaustion determination was proper. We now turn to that question.
II. Exhaustion
“It is well settled that the IDEA requires an aggrieved party to exhaust all *205 administrative remedies before bringing a civil action in federal or state court.... ” J.S. v. Attica Cent. Sch., 386 F.3d 107, 112 (2d Cir.2004). However, the exhaustion requirement does not apply “in situations in which exhaustion would be futile.” Polera, 288 F.3d at 488 (internal quotation omitted). To show futility, a plaintiff must demonstrate that “adequate remedies are not reasonably available” or that “the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process.” J.G. v. Bd. of Educ. of Rochester City Sch. Dist., 830 F.2d 444, 447 (2d Cir.1987); Heldman v. Sobol, 962 F.2d 148, 158 (2d Cir.1992). For relief to be adequate, it must “give realistic protection to the claimed right.” Murphy, 297 F.3d at 199 (internal quotation marks omitted). The burden of demonstrating futility rests with the party seeking to avoid the exhaustion requirement. Polera, 288 F.3d at 489 n. 8.
The district court found that Coleman had established that exhaustion would be futile. The district court reasoned that Coleman would not have been able to exhaust the full administrative processes available&emdash;review of the CSE’s adverse manifestation determination by an IHO and an SRO&emdash;before the school year ended. As a result, Coleman would have missed his graduation and been unable to participate in extracurricular activities, including track and field events. The district court believed that these circumstances meant that there were no adequate administrative remedies available.
We do not agree that the administrative processes available to Coleman left him without an adequate remedy. The district court erred by focusing on the detriment Coleman would have suffered on account of being removed from NFA and placed in an IAES until he graduated. The sole question was whether he had a right, under the IDEA, to be reinstated at NFA while the allegedly erroneous manifestation determination was reviewed. He did not.
To be sure, 20 U.S.C. § 1415(k)(1)(F)(ni) establishes a disabled child’s right to be returned to the school from which he or she was removed if the behavior that gave rise to the child’s violation of the school’s code of conduct is determined to be a manifestation of the child’s disability. And the procedural safeguards provided in the IDEA entitle “[t]he parent of a child who disagrees with ... the manifestation determination ... [to] a hearing,” § 1415(k)(3)(A); see 8 N.Y.C.R.R. § 201.11(a)(3), conducted on an “expedited” basis, § 1415(k)(4)(B); 8 N.Y.C.R.R. § 201.11(c). However, an aggrieved child does not have the right to return to the school from which he or she has been removed while the administrative and judicial review process is underway. Cf. Murphy, 297 F.3d at 199 (Section 1415(j)&emdash;the “stay-put” provision&emdash;establishes a student’s right to a stable learning environment during administrative and judicial review and, thus, if that right is threatened, “an immediate appeal is necessary to give realistic protection to [it]”) (internal quotation marks omitted). Congress specifically spoke to this issue in § 1415(k)(4)(A), stating: “When an appeal [of a manifestation determination] has been requested ... the child shall remain in the interim alternative educational setting pending the decision of the hearing officer .... ” (Emphasis added). Congress could have chosen, but did not, to permit the child to remain in his original school. In sum, while Coleman had a right not to be removed from NFA based on an erroneous determination of no manifestation, he had no right to reinstatement while that determination was being reviewed.
As a broader matter, we are not persuaded that a disabled child has a right, *206 under the IDEA, to graduate on a date certain or from a particular educational institution — specifically, the child’s original school rather than an IAES. The IDEA’S mandate is that all disabled children be given a “free appropriate public education.” 20 U.S.C. § 1412(a)(1)(A); see Bd. of Educ. v. Rowley, 458 U.S. 176, 181, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (interpreting the predecessor statute to the IDEA). In fulfilling this mandate, there are no general time and manner requirements placed on the states other than those provided in the IDEA and created by the states. The State of New York has administrative processes consistent with these requirements. See Coleman, 319 F.Supp.2d at 450-51 (describing administrative processes available to Coleman); see also Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 123 (2d Cir.1998) (describing the system New York has developed to meet its obligations under the IDEA and to implement its own policies regarding the education of disabled children). That the carrying out of these administrative processes may take some time, and in certain circumstances result in the child graduating in an IAES after his anticipated graduation date, does not equate to an inadequate remedy. Cf. Polera, 288 F.3d at 488 (“[R]elief available ... mean[s] relief for the events, condition, or consequences of which the person complains, [even if] not necessarily relief of the kind the person prefers.”) (internal quotation marks omitted).
Coleman argues that because he was set to graduate in a few weeks, his case presented an “emergency situation” such that exhaustion would be futile. Coleman’s reference to the term “emergency situation” finds its origins in the IDEA’S legislative history. The House Report to the IDEA’S predecessor defined the parameters of the futility exception to include complaints that “an emergency situation exists (e.g., the failure to take immediate action will adversely affect a child’s mental or physical health).” H.R.Rep. No. 296, 99th Cong., 1st Sess. 7 (1985) (emphasis added).
Coleman’s “emergency situation” argument is unpersuasive here. In the first place, it fails to address that the relief Coleman sought — graduating with his class — is not necessary to prevent the deprivation of a right protected under the IDEA. In any event, there was no showing that the delay that would have occurred in exhausting the administrative processes, which may have entailed his missing graduation on June 24 and participation in certain school activities, would have affected Coleman’s mental or physical health; he does not even suggest as much. Acceptance of Coleman’s argument could lead district courts, following the suspension of a disabled student after an adverse manifestation determination, to bypass the IDEA’S exhaustion requirement altogether because any administrative remedy, while the student was attending the IAES, would be insufficient to correct the “harm” inflicted by missing out on such things as normal classroom time and extracurricular activities at the disabled student’s regular school. Such a sweeping exception would undermine the IDEA’S statutory mandate for exhaustion. See Polera, 288 F.3d at 488. This is why other circuits have stated that the emergency situation exception “ ‘is to be sparingly invoked.’ ” Rose v. Yeaw, 214 F.3d 206, 212 (1st Cir.2000) (quoting Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 779 (3d Cir.1994)); see also Komninos, 13 F.3d at 779 (“[M]ere allegations by plaintiffs of irreversible harm will not be enough to excuse the completion of administrative proceedings. Plaintiffs must provide a sufficient preliminary showing that the child will suffer serious and irreversible mental or physical damage (e.g., irremediable intellectual regression) before the administrative process may be circumvented.”). That Coleman *207 was a superior athlete who was on the verge of graduating does not make his claim of an emergency situation more compelling.
Accordingly, we conclude that, because the district court should have dismissed Coleman’s complaint for failure to exhaust his administrative remedies and erred in not doing so, it was also error for the district court to award Coleman attorneys’ fees.

CONCLUSION

For the foregoing reasons, we reverse the district court’s award of attorneys’ fees.

. The facts are drawn principally from the district court's opinion and order of May 17, 2004. See Coleman, 319 F.Supp.2d at 448-50.

. The record reveals only that these criminal charges were resolved on April 28, 2004, not the result.

. As noted, an appeal from the impartial hearing officer's decision to a state review officer may be taken. Except in the event the state review officer grants a specific extension of time at the request of a party, a final decision must be reached "not later than 30 days after the receipt of a request for a review.” 8 N.Y.C.R.R. § 200.5(k)(2).

. The IAES services, which the Defendants claim they have offered Coleman, include 5 hours of home teaching daily (2 hours for English, 2 hours for Science, 1 hour for Economics) and 1 hour with a prescriptive learning resource special education teacher. Coleman, 319 F.Supp.2d at 449 n. 5.

. We note that the Seventh Circuit has recently reaffirmed its conclusion that the IDEA'S exhaustion requirement is only an affirmative defense, not a jurisdictional bar, because " 'lack of exhaustion usually is waivable. " Mosely v. Bd. of Educ., 434 F.3d 527, 532-33 (7th Cir.2006) (quoting Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68, 98 F.3d 989, 991 (7th Cir.1996)).

. The Supreme Court recently answered affirmatively the related question of whether the time limit in Rule 4(a)(6)-which in civil cases allows district courts to reopen Rule 4(a)(l)(A)’s 30-day filing period by 14 days-is jurisdictional. Bowles v. Russell, -U.S. -, 127 S.Ct. 2360, 2366, 168 L.Ed.2d 96 (2007).

. That Defendants were not able to attack the district court’s exhaustion determination on direct appeal does not amount to waiver or forfeiture. Defendants stipulated to a dismissal of their appeal because Coleman graduated from NFA. Contrary to Coleman's suggestion, they could not have maintained their appeal on the basis that an award of attorneys’ fees might possibly be forthcoming. We surely would have dismissed such an appeal as moot rather than issue an advisory opinion. See, e.g., ABC, Inc. v. Stewart, 360 F.3d 90, 97 (2d Cir.2004) ("[Ujnder the mootness doctrine, if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, we must dismiss the case, rather than issue an advisory opinion.'') (internal quotation marks omitted). Thus, there was no relief available to Defendants when they voluntarily withdrew their appeal because at that time Coleman had not moved for attorneys' fees and it was not certain that he would do so.