Thomas MACKEY, Parent of a disabled student, Thomas M.; Barbara Mackey, Parent of a disabled student, Thomas M., Plaintiffs–Appellants,

v.

BOARD OF EDUCATION FOR THE ARLINGTON CENTRAL SCHOOL DISTRICT; The State Education Department, Defendants–Appellees.

No. 03–7860.

United States Court of Appeals, Second Circuit.

Argued: Aug. 25, 2004.

Decided: Oct. 7, 2004.

Rosealee Charpentier, Family Advocates, Inc., Kingston, NY, for Plaintiffs–Appellants.

Jeffrey J. Schiro, Kuntz, Spagnuolo, Scapoli & Schiro, P.C., Bedford Village, NY, for Appellee Board of Education for the Arlington Central School District.

Carol Fischer, Assistant Solicitor General (Ann P. Zybert, Assistant Solicitor General, and Marion R. Buchbinder, Senior Assistant Solicitor General, on the brief), for Eliot Spitzer, Attorney General of the State of New York, New York, NY, for Appellee State Education Department.

Before: MESKILL, MINER, and KATZMANN, Circuit Judges.

KATZMANN, Circuit Judge.

This case presents the question of whether the parents of a learning disabled child are entitled to equitable relief under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1490, reimbursing them for private school tuition, when the denial of reimbursement results solely from the untimely issuance of a state administrative decision. The suit arises from the complaint of plaintiffs-appellants, Thomas and Barbara Mackey (the "parents"), against defendants-appellees, the Board of Education for the Arlington Central School District (the "District") and the State Education Department (the "State"), alleging that the District is obligated to reimburse them for the cost of placing their son in private school for the 2000–2001 academic year and that they are entitled to declaratory relief relating to the State violation of various procedural safeguards mandated under the IDEA. The parents' tuition reimbursement claim is premised on two separate theories: (1) that the individualized education plan ("IEP") fashioned by the District for the 2000–2001 school year was inadequate (the "IEP inadequacy claim"); and (2) that the private school was the child's pendency placement for the 2000–2001 school year (the "pendency claim"). The district court granted the District's motion for summary judgment and the State's motion to dismiss, and entered judgment in favor of defendants. In a summary order issued simultaneously with this opinion, we affirm the district court's dismissal of the parents' IEP inadequacy claim and of their request for declaratory relief against the State. We write here to address the parents' pendency claim. We conclude that the district court erred in holding that the parents were not entitled to reimbursement on a pendency basis. We therefore reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

## BACKGROUND

### I. The IDEA

The IDEA offers federal funds to states that demonstrate, *inter alia*, that

they have developed plans to assure "all children with disabilities residing in the state" a "free appropriate public education" ("FAPE"). 20 U.S.C. § 1412(a)(1)(A) (2000); *see Bd. of Educ. v. Rowley,* 458 U.S. 176, 180–81, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). To meet the IDEA requirements, a school district must provide each child who has a disability with "special education and related services," 20 U.S.C. § 1401(8), that are "reasonably calculated to enable the child to receive educational benefits." *Rowley,* 458 U.S. at 203–04, 206–07, 102 S.Ct. 3034. "The centerpiece of the IDEA's education delivery system is the individualized education program, or IEP," *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,* 297 F.3d 195, 197 (2d Cir.2002) (internal quotations marks omitted), a document in which "[t]he particular educational needs of a disabled child and the services required to meet those needs" are "set forth at least annually," *Walczak v. Fla. Union Free Sch. Dist.,* 142 F.3d 119, 122 (2d Cir.1998). New York State has "assigned responsibility for developing appropriate IEPs to local Committees on Special Education ('CSE')." *Id.* at 123.

The IDEA provides a variety of "procedural safeguards with respect to the provision of free appropriate public education" by school districts. 20 U.S.C. § 1415(a). In compliance with these requirements, New York State has implemented a "two-tier system of administrative review." *Murphy,* 297 F.3d at 197. The first tier entitles parents dissatisfied with a proposed IEP to have it reviewed before an impartial hearing officer ("IHO") appointed by the board of education. N.Y. Educ. Law § 4404(1) (McKinney 2001); *see gen-*

*erally* 20 U.S.C. § 1415(f). The IHO is required to render a decision "not later than 45 days after the receipt by the board of education of a request for a hearing." N.Y. Comp.Codes R. & Regs. tit. 8, § 200.5(i)(4) (2004). "[P]arties aggrieved by the outcome of the due process hearing may" proceed to the second tier, "an appeal before a state review officer ('SRO')." *Murphy,* 297 F.3d at 197; *see* N.Y. Educ. Law § 4404(2); *see generally* 20 U.S.C. § 1415(g). The SRO is required to reach a decision and mail it to the parties "not later than 30 days after the receipt of a request for a review." N.Y. Comp.Codes R. & Regs. tit. 8, § 200.5(j)(2) (2004). Any party still aggrieved may sue in state or federal court. *See* 20 U.S.C. § 1415(i)(2).

■ During the pendency of special education proceedings, unless the school district and the parents agree otherwise, federal and state law require that the child remain in his or her then-current educational placement. *See* 20 U.S.C. § 1415(j) (the "stay-put" provision); 34 C.F.R. § 300.514(a)[1]; N.Y. Educ. L. § 4404(4)(a). Parents should, however, keep in mind that if they "unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local officials, [they] do so at their own financial risk." *Sch. Comm. v. Dep't of Ed.,* 471 U.S. 359, 373–74, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). A claim for tuition reimbursement pursuant to the stay-put provision is evaluated independently from the evaluation of a claim for tuition reimbursement pursuant to the inadequacy of an IEP. "[Section 1415(j) represents] Congress' policy choice

---

1. This regulation, entitled "Child's status during proceedings," provides in pertinent part: (a) [D]uring the pendency of any administrative or judicial proceeding ..., unless the State or local agency and the parents of

the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement. 34 C.F.R. § 300.514(a) (2004).

that all handicapped children, *regardless of whether their case is meritorious or not,* are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." *Susquenita Sch. Dist. v. Raelee S.,* 96 F.3d 78, 83 (3d Cir.1996) (emphasis supplied, internal quotation marks omitted), *cited with approval in Bd. of Educ. v. Schutz,* 290 F.3d 476, 484 (2d Cir.2002).

## II. Factual and Procedural Background

In 1988, the District classified the Mackeys' son Thomas ("T.M.") as learning disabled. T.M. attended special-education and inclusion classes at the public elementary and middle school, except for a short period of time in the seventh grade. During the ninth and tenth grades (the 1997–1998 and 1998–1999 school years, respectively), T.M. enrolled in special-education classes at Arlington High School and received special instruction in vocational education and career activities, pursuant to the IEPs developed for those years.

### A. The 1999–2000 School Year (not at issue in this action)

In July 1999, after expressing their view that T.M.'s 1999–2000 IEP contained serious deficiencies, the parents informed the District that they would be enrolling T.M. at Maplebrook School in Armenia, New York for the 1999–2000 school year and would seek tuition reimbursement for that placement. In October 1999, the parents requested a due process hearing to obtain tuition reimbursement from the District, the hearing took place between January and May 2000. In September 2000, the IHO found that the District had provided T.M. with a FAPE and rejected the parents' tuition reimbursement claim. On November 9, 2000, the parents appealed to the SRO. Almost a year later, on November 21, 2001, the SRO rendered a decision,

finding that 1) the IHO had erred in concluding that the District provided T.M. a FAPE for 1999–2000, and 2) the parents had shown that T.M.'s special educational needs had been met at Maplebrook. The SRO ordered the District to reimburse the parents for the 1999–2000 Maplebrook tuition. The District challenged the SRO's decision in federal court and lost. The District appealed, but later withdrew the appeal and, in May 2002, reimbursed the parents for T.M.'s tuition at Maplebrook.

### B. The 2000–2001 School Year (the year at issue)

Although the IHO had not yet issued a decision on the parents' tuition reimbursement claim for Maplebrook for the 1999–2000 school year, the CSE presented the parents with an IEP for the 2000–2001 school year, which the parents rejected during an August 31, 2000 meeting. At the meeting, the parents informed the District that they would be placing T.M. at Maplebrook for a second year. In October 2000, the parents asked the District for class profiles for the special-education classes recommended in the IEP. Nineteen days later, the Special Education Director responded that he "did not routinely develop class profiles" for those classes. On January 6, 2001, the parents formally requested an impartial hearing, seeking tuition reimbursement relating to T.M.'s placement at Maplebrook for the 2000–2001 school year. The hearings took place between March and May 2001. In June 2001, the IHO denied the parents' reimbursement claim, finding that T.M.'s unilateral placement at Maplebrook "was not the least restrictive environment and [was] therefore inappropriate," and that the District had provided a FAPE.

In July 2001, the parents appealed the IHO's decision. Almost a year later, on June 20, 2002, the SRO dismissed the ap-

peal, finding that the high school classes proposed in the 2000–2001 IEP were appropriate for T.M. In this decision, the SRO remarked, by way of background, that he was addressing the second appeal involving T.M.; in the previous appeal, No. 00–084, the SRO had ordered reimbursement for T.M.'s tuition at Maplebrook. The SRO then said, "Maplebrook became the student's pendency placement for the 2000–01 school year, by virtue of [that] decision (34 CFR 300.514[c] )." [2]

## C. The Federal Court Action

On October 21, 2002, the parents brought the instant action against the District and the State, alleging that they were aggrieved by the SRO's June 20, 2002 decision. More specifically, the parents alleged, *inter alia*, that the District violated the stay-put provision of the IDEA by failing to pay for T.M.'s private-school

2. The CSE prepared another IEP for the 2001–2002 school year, which T.M.'s parents rejected. In September 2001, the parents notified the District that they were unilaterally enrolling T.M. in the Old Forge Center of Lynn University in Old Forge, New York, and sought a third impartial hearing to secure reimbursement for their new placement. In January 2002, the parents requested a preliminary ruling on T.M.'s pendency placement pending the conclusion of the proceedings. In a February 2002 interim decision, the IHO denied the parents' motion to declare that Old Forge was T.M.'s stay-put placement. In December 2002, the SRO affirmed the IHO's interim decision, stating:

> Petitioners assert that Maplebrook became their son's pendency placement by virtue of my decision awarding them tuition reimbursement for the 1999–2000 school year. They are correct in that assertion (34 C.F.R. § 300.514[c] ) . . . .
>
> When petitioners requested the hearing in this proceeding on September 5, 2001, their son's pendency placement pursuant to my decision in [Appeal No. 00–084] was in Maplebrook.

T.M.'s move to Old Forge, the parents' pendency arguments concerning the 2001–2002

placement for 2000–2001, given that the November 21, 2001 SRO decision caused T.M.'s "status quo placement" to shift from the public school to the private school.

The district court rejected the parents' pendency claim, reasoning that the public school that T.M. had attended from 1997 to 1999 had been his current educational placement until the school district and parents agreed otherwise, pursuant to 34 C.F.R. § 300.514(a); the November 21, 2001 SRO decision, which found the 1999–2000 IEP inadequate and directed the District to reimburse the parents for that school year, represented such an agreement and changed T.M.'s placement from the public school to Maplebrook; but, because that decision had been rendered *after* the 2000–2001 school year at issue, the parents could not be reimbursed for Maplebrook tuition for that year.[3]

school year, and the merits of the 2001–2002 IEP, are the subject of independent proceedings.

3. The district court agreed with the parents' equitable arguments that their failure to exhaust their administrative remedies should be excused on the basis of futility occasioned by the delay in the SRO's final decision on their tuition reimbursement claim for the 1999–2000 school year. The district court observed *that the parents' failure to exhaust had been a direct result of the SRO's "persistent and excessive untimeliness"* in rendering a decision because, until the SRO had decided that Maplebrook was T.M.'s appropriate placement in 1999–2000, the parents had "no basis upon which to claim that Maplebrook should be T.M.'s pendency placement for 2000–2001." Interestingly, the district court quoted that part of the SRO's November 2001 decision in which the SRO stated that the parents were "correct" in their assertion that Maplebrook was T.M.'s pendency placement for 2000–2001, but only in the context of the exhaustion argument. The District did not challenge the district court's exhaustion finding on appeal.

## Discussion

### I. Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *See M.S. ex rel. S.S. v. Bd. of Educ.*, 231 F.3d 96, 102 (2d Cir.2000). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

▇ Although the parents did not move for summary judgment, this Court may direct the district court to enter summary judgment in their favor if all the issues were before the district court and no material issue of fact is disputed. *See First Nat'l Bank v. Md. Cas. Co.*, 290 F.2d 246, 251–52 (2d Cir.1961); *see also Abrams v. Occidental Petroleum Corp.*, 450 F.2d 157, 165 (2d Cir.1971). On this record, we find no material issues of fact in dispute.

### II. Application

The IDEA's "stay put" provision, 20 U.S.C. § 1415(j), provides, *inter alia*, that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child." As this Court has explained,

> [u]nder the statute, the inquiry focuses on identifying 'the then current educational placement,' and, further, on who should pay for it, for implicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing. To cut off public funds would amount to a unilateral change in placement, prohibited by the Act.

*Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir.1982) (footnote omitted). Although the IDEA does not define, and our Circuit has not previously considered the meaning of, the term "then-current educational placement," our sister circuits have interpreted the term to mean: (1) "typically the placement described in the child's most recently implemented IEP," *Johnson v. Special Educ. Hearing Office*, 287 F.3d 1176, 1180 (9th Cir.2002); (2) "the operative placement actually functioning at the time ... when the stay put provision of the IDEA was invoked," *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir.1996); and (3) "[the placement at the time of] the previously implemented IEP," *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625 (6th Cir.1990).

The regulations provide that a child's current placement may be changed upon agreement between the parents and the state, and that an SRO decision that "agrees with the parents that a change of placement is appropriate ...; must be treated as such an agreement." *See* 34 C.F.R. § 300.514(a) and (c). Pursuant to § 1415(j), there were only two ways that T.M.'s placement could have been changed from the public school: by further agreement of the District and his parents, or by a decision by an SRO. In *Bd. of Educ. v. Schutz*, 290 F.3d 476 (2d Cir.2002), we held that "once the parents' challenge [to a proposed IEP] succeeds ..., consent to the private placement is implied by law, and the requirements of § 1415(j) become the responsibility of the school district." *Id.* at 484.

▇ Thus, the parties agree that once the SRO rendered a decision in November 2001, there was an agreement changing T.M.'s pendency placement from the public school to the private school. What is in dispute is the effect this change must be given when the decision was rendered

twenty-six months after the parents enrolled T.M. in Maplebrook and approximately five months after the 2000–2001 school year at issue had ended. The District argues that the parents were not entitled to tuition reimbursement on a pendency basis because Maplebrook was never T.M.'s pendency placement while he was enrolled there: the public school was his placement until the November 21, 2001 SRO decision, which changed T.M.'s placement to Maplebrook, but that decision had been rendered *after* the 2000–2001 school year, and the hearing regarding that school year, had ended. The District further contended that this Court should reject pendency reimbursement "solely based on dicta contained an [sic] SRO decision." The parents counter that the IDEA's pendency provisions and "equitable considerations" flowing therefrom require the District to assume financial responsibility for T.M.'s placement at Maplebrook throughout the 2000–2001 school year. They assert that the SRO's November 2001 decision, changing T.M.'s placement to Maplebrook, should be found "retroactive" to the date the law required it to be issued—not later than 30 days after the receipt of a request for review—particularly given the "unjustified harm" to them imposed by the delay.[4] The district court agreed with the District, finding that T.M.'s change in placement did not take effect until after the 2000–2001 school year had ended and therefore the SRO's decision could not serve as grounds to award the parents tuition reimbursement on the basis of pendency.

Admittedly, the district court's decision finds some support in case law. *See Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 86 F.Supp.2d 354, 366 (S.D.N.Y. 2000) ("[O]nce the SRO rendered its decision, there was an 'agreement' changing [the student's] pendent placement to [the private school]. *From that date forward,* the District is responsible for maintaining that placement.") (emphasis supplied). The district court, however, essentially nullified the effect of the November 2001 SRO decision by finding that, even though T.M.'s placement changed to Maplebrook, it changed on the date of the order, after the school year at issue, and thus did not affect the pendency issue.

We think such an outcome, if permitted to stand, is unfair to the parents. If the SRO had issued its order within thirty days of the District's November 9, 2000 receipt of the parents' request for review of the IHO's decision, Maplebrook would have been found to be T.M.'s pendency placement from December 9, 2000 forward, and the parents would, without question, have been entitled to tuition reimbursement on a pendency basis for at least part of the 2000–2001 school year. Only because the SRO was derelict, through no fault of the parents (who also sued the State because the IHO and SRO had not complied with state timeliness regulations in issuing decisions),[5] the reimbursement to which they would otherwise have been entitled from the District disappeared. The District, by the district court's decision, was allowed to escape the financial consequences of pendency placement for

---

4. The District received the parents' request for review on November 9, 2000.

5. At oral argument, the State asserted that it had reached a Stipulation of Settlement in *Engwiller v. Pine Plains Cent. Sch. Dist,* 110 F.Supp.2d 236 (S.D.N.Y.), pursuant to which the State agreed to institute changes to ensure

that IHO decisions were rendered in a timely manner. In a class action concerning delays in SRO decisions, *Schmelzer v. New York,* No. 01–CV–1864 (E.D.N.Y.), the district court had granted the plaintiff class full relief by issuing a permanent injunction directing timely issuance of appeal decisions by SROs.

which the District otherwise would have been responsible. The District grudgingly acknowledges the impact of the SRO's delayed decision in its brief: "Had the SRO rendered a timely decision on the parents' petition for review ... on or about December 11, 2000, they might have had an argument that Maplebrook was T.M.'s pendency placement for the 2000/01 school year."

The issue then becomes, can the November 2001 SRO decision be applied retroactively to change T.M.'s pendency to Maplebrook at some undefined date during the 2000–2001 school year, thus giving effect to the untimely SRO decision in the parents' favor?

■ In *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 12, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993) October 7, 2004, the Supreme Court observed that the IDEA grants "equitable authority" to the courts in resolving cases. Courts are empowered under the IDEA "to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." *Sch. Comm. v. Dep't of Ed.*, 471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) ("*Burlington*"). In *Burlington*, the Supreme Court recognized that review of an IEP is a "ponderous" process and that a "final judicial decision on the merits" would "in most instances come a year or more after the school term covered by that IEP has passed." 471 U.S. at 370, 105 S.Ct. 1996. The Court ordered a town to reimburse *retroactively* parents who had placed their child in a private school, where the IEP was found to be inadequate, holding: "Reimbursement merely requires the Town to belatedly pay expenses that it should have paid all along and would have borne in the first instance

had it developed a proper IEP." *Id.* at 370–71, 105 S.Ct. 1996. The Court cited the IDEA's legislative history as supporting such a resolution, as well as the IDEA's provision that a reviewing court has the broad discretion to "grant such relief as the court determines is appropriate." *Id.* at 369, 105 S.Ct. 1996 (internal quotation ·marks omitted); *see also* 20 U.S.C. § 1415(i)(2)(B)(iii).

The question before the Supreme Court in *Burlington* was whether it was appropriate to reimburse parents retroactively for private-school tuition based on the merits of their claim—*i.e.*, because the Town's IEP was inadequate and the private-school placement was appropriate— and here the claim for retroactive reimbursement is based on pendency.· In both cases, however, the parents were due reimbursement that had been denied them by the simple passage of time, not because they were not entitled, under the IDEA, to the relief they sought. Indeed, the argument for retroactive reimbursement is even stronger here than in *Burlington* because in that case there was apparently no delay based on a statutory time limit, as there is here. In any event, here, as in *Burlington*, " 'such relief as the court determines is appropriate,' " within the meaning of 20 U.S.C. § 1415(i)(2)(B)(iii), "means that equitable considerations are relevant in fashioning relief." 471 U.S. at 374, 105 S.Ct. 1996.

Invested with such equitable authority, we vacate the ruling of the district court insofar as it denies the parents' pendency claim. On remand, the district court should make findings on the appropriate date that T.M.'s pendency placement at Maplebrook took effect during the 2000–2001 school year. From that date until the end of the school year, the District will be responsible for tuition reimbursement on a pendency basis. The district court may

wish to look to *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 86 F.Supp.2d 354 (S.D.N.Y.2000), for guidance in determining the date by which the District is responsible for tuition for the 2000–2001 school year when confronted with an untimely decision by the SRO. Finding that "it would be unfair to penalize Plaintiffs for the delay, which they neither caused nor agreed to," the district court in *Murphy* determined that the plaintiffs should be reimbursed for tuition payments from the date the SRO *should* have rendered a decision forward. *Id.* at 367. The district court observed that "if such unjustified delays in the SRO review process are countenanced, school districts and the State will have strong incentive to delay administrative decisions as a means of deferring or, worse yet, avoiding financial responsibility." *Id.* The district court may also wish to consider whether the nineteen days the District took to respond to the parents' October 2000 request for class profiles had any effect in delaying the parents' request for an impartial hearing on the adequacy of the 2000–2001 IEP.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in the accompanying summary order, the judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings not inconsistent with this opinion.