Pearl **MURPHY** and Theodore Murphy, Plaintiffs–Appellees,

v.

**ARLINGTON CENTRAL SCHOOL DISTRICT BOARD OF EDUCATION,** Defendant–Appellant.

**Docket No. 00–7358.**

United States Court of Appeals, Second Circuit.

Argued March 13, 2002.

Decided July 16, 2002.

Jeffrey Schiro, (Raymond G. Kuntz, on the brief), Bedford Village, N.Y., for Defendant–Appellant.

Richard A. Acito, Astoria, N.Y., for Plaintiffs–Appellees.

Karen Norlander, Scott M. Goodspeed, Ruberti, Girvin, & Ferlazzoo, Albany, N.Y., for Amicus Curiae New York State Council of School Superintendents.

Jay Worona, Albany, N.Y., for Amicus Curiae New York State School Boards Association.

Thomas E. Chandler, Mark L. Gross, U.S. Department of Justice, (Bill Lann Lee, Acting Assistant Attorney General, Judith Winston, General Counsel, Suzanne Sheridan, U.S. Department of Education, on the brief), Washington, D.C., for Amicus Curiae United States of America.

Before: McLAUGHLIN, LEVAL, and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge.

This case has its genesis in a dispute over the appropriate educational placement for plaintiffs' disabled son. The Murphys, parents of Joseph Murphy, a "child with a disability" within the meaning of the Individuals with Disabilities Education Act ("the IDEA"), 20 U.S.C. § 1400 *et seq.*, petitioned the United States District Court for the Southern District of New York (Haight, J.) for an

injunction requiring Defendant-appellant Arlington Central School District Board of Education ("Arlington") to assume financial responsibility for their child's tuition at Kildonan, a private school, during the pendency of administrative proceedings brought to determine Joseph's proper academic placement for the 1999–2000 school year. The district court, applying the IDEA's stay-put provisions, see 20 U.S.C. § 1415(j), held that, because Kildonan is Joseph's current educational placement, Arlington was obligated to pay for Joseph's schooling until such time as Joseph's placement was changed in accordance with the IDEA. On appeal, Arlington argues that the district court lacked subject matter jurisdiction over the plaintiffs' claims because plaintiffs did not exhaust their administrative remedies. Arlington also contends that § 1415(j) does not provide a basis for the prospective injunctive relief awarded by the district court, that the district court erred in determining that Kildonan is Joseph's current educational placement and that the district court abused its discretion in not ordering the *pro se* plaintiffs, appearing on behalf of their son, to retain counsel.

We hold that the district court properly exercised jurisdiction over this matter as plaintiffs' claim fell within a recognized exception to the exhaustion requirement. Moreover, even though the district court should not have permitted plaintiffs to represent their minor son *pro se*, we do not find reversible error. Because Arlington's substantive challenges to the district court's order have been resolved in favor of plaintiffs by an intervening Second Circuit decision, we affirm.

## BACKGROUND

Some understanding of the IDEA's statutory framework is essential to put this dispute in its proper context. Congress enacted the IDEA " 'to assure that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs.' " *Cedar Rapids Cmty. Sch. Dist. v. Garret F.*, 526 U.S. 66, 68, 119 S.Ct. 992, 143 L.Ed.2d 154 (1999) (quoting 20 U.S.C. § 1400(c)) (alterations in original). The "centerpiece" of the IDEA's education delivery system is the "individualized education program," or "IEP." *Honig v. Doe*, 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). The IEP, the result of collaborations between parents, educators, and representatives of the school district, "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Id.* Concerned that parental input into the creation of the IEP would not be sufficient to safeguard a child's right to a free and appropriate education, Congress also included within the IDEA procedural safeguards that enable parents and students to challenge the local educational agency's decisions. 20 U.S.C. § 1415. New York has implemented a two-tier system of administrative review. N.Y. Educ. Law § 4404 (McKinney 1999). First, parents are entitled to a review of the IEP before an impartial hearing officer. *Id.* at § 4404(1). Next, parties aggrieved by the outcome of the due process hearing may pursue an appeal before a state review officer ("SRO"). *Id.* at § 4404(2). Ordinarily, appeal may be taken to either the state or federal courts only after the SRO has rendered a decision.

During the pendency of these administrative proceedings, the IDEA mandates that "unless the State or local educational agency and the parents otherwise agree,

the child shall remain in the then-current educational placement of such child...." 20 U.S.C. § 1415(j). "[I]mplicit in [this provision] is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing. To cut off public funds would amount to a unilateral change in placement, prohibited by the Act." *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir.1982)

In July 1998, Arlington prepared Joseph's IEP for the upcoming school year. Under Arlington's IEP, Joseph was assigned to Arlington High School. Objecting to his placement, plaintiffs instead enrolled their son at Kildonan, a private school that specializes in the education of disabled students. Joseph remained at Kildonan for the entirety of the 1998–99 school year.

On September 3, 1998, plaintiffs invoked the IDEA's due process procedures. Plaintiffs challenged Arlington's placement of their son as inadequate to serve his special educational needs and sought reimbursement for the cost of Joseph's tuition at Kildonan for the 1998–1999 year. The hearing officer rendered a decision in favor of plaintiffs in July 1999 and awarded plaintiffs the costs of Joseph's tuition. Arlington appealed this decision to the SRO in August of 1999. In August 1999, while the SRO's decision was still pending, plaintiffs brought a *pro se* action in federal court, seeking a temporary restraining order requiring Arlington to fund Joseph's tuition during the pendency of the action before the SRO. The district court was unable to determine on the record before it whether it possessed subject matter jurisdiction over plaintiffs' action before the state administrative process had come to a close. *Murphy v. Arlington Cent. Sch. Dist.*, 1999 WL 980164 (S.D.N.Y. Oct.28,

1999) ("*Murphy I*"). On December 14, 1999, before the district court had settled the jurisdiction issue, the SRO affirmed the decision of the hearing officer. The SRO held that Kildonan was the appropriate placement for Joseph and ordered defendant to reimburse plaintiffs for all tuition expenses incurred for the 1998–1999 school year. Even though an appeal from the SRO's decision is currently pending in the state court, Arlington remitted Joseph's tuition for the 1998 school year to plaintiffs. The district court dismissed plaintiffs' case as moot. *Murphy v. Arlington Cent. Sch. Dist.*, 2000 WL 10255 (S.D.N.Y. Jan.5, 2000) ("*Murphy II*").

While this conflict wound its way through the state administrative system and the courts, another school year loomed ahead. Defendant again proposed an IEP placing Joseph at Arlington High School, and plaintiffs again rejected this plan and unilaterally enrolled their son at Kildonan for the 1999 2000 school term. Plaintiffs invoked their right to an administrative review of Arlington's 1999 IEP and requested reimbursement for Joseph's tuition for the 1999 school year, thereby setting in motion the same process that had recently been completed with respect to the 1998 school year.

While continuing to pursue their administrative remedies, plaintiffs filed a motion before the district court seeking an order to compel defendant to pay Joseph's tuition for the 1999 2000 school year during the pendency of the administrative process. The district court held that the SRO's decision constituted an "agreement" by the state that Joseph's current educational placement was Kildonan. *Murphy v. Arlington Cent. Sch. Dist.*, 86 F.Supp.2d 354, 365–67 (S.D.N.Y.2000) ("*Murphy III*"). Pursuant to the IDEA's stay-put provisions, the district court entered an order requiring Arlington to fi-

nance Joseph's education at Kildonan from December 13, 1999, the date the SRO issued its decision with respect to tuition reimbursement for the 1998 school year, until such time as Joseph's educational placement changes.

## DISCUSSION

"We review the District Court's entry of a permanent injunction for abuse of discretion, which may be found where the Court, in issuing the injunction, relied on clearly erroneous findings of fact or an error of law." *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 237 (2d Cir.2001).

■ We begin by addressing the jurisdictional issue. Before an aggrieved individual may bring an action in state or federal court for a violation of the IDEA, he or she must seek recourse from the administrative procedures established by the statute. *See* 20 U.S.C. § 1415(i)(2). The plaintiff's failure to exhaust administrative remedies ordinarily deprives this court of subject matter jurisdiction over any IDEA claims. *Hope v. Cortines*, 69 F.3d 687, 688 (2d Cir.1995). It is undisputed that plaintiffs have not sought an administrative ruling on whether Arlington must fund Joseph's private schooling until the issue of his placement for the 1999 school year is resolved. Arlington contends that the district court therefore abused its discretion in exercising jurisdiction over plaintiffs' claim.

■ The United States, appearing as *amicus curiae*, suggests that the exhaustion requirement does not extend to § 1415(j). *See Cole v. Metro. Gov't of Nashville*, 954 F.Supp. 1214 (M.D.Tenn. 1997) (explaining that the stay-put provision is "less a substantive promise of the IDEA than a protective mechanism designed to preserve the status quo *while* the plaintiff seeks to enforce the provisions of

the IDEA" and hence is not subject to the statute's procedural demands). We need not decide whether the exhaustion requirement is generally applicable to all claims arising under the IDEA because assuming *arguendo* that it is, an action alleging violation of the stay-put provision falls within one, if not more, of the enumerated exceptions to this jurisdictional prerequisite.

The exhaustion requirement is "not an inflexible rule." *Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir.1987). Rather, Congress specified that exhaustion is not necessary if (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies. *Id.* at 756 (quoting H.R.Rep. No. 296, 99th Cong., 1st Sess. 7 (1985)). The burden of proving the applicability of one of these exceptions falls on the party seeking to avoid exhaustion. *Polera v. Bd. of Educ.*, 288 F.3d 478, 488 n. 8 (2d Cir.2002).

The administrative process is "inadequate" to remedy violations of § 1415(j) because, given the time-sensitive nature of the IDEA's stay-put provision, "an immediate appeal is necessary to give realistic protection to the claimed right." *Miss America Org. v. Mattel, Inc.*, 945 F.2d 536, 545 (2d Cir.1991). Section 1415(j) establishes a student's right to a stable learning environment during what may be a lengthy administrative and judicial review. *Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir.1996). If the child is ejected from his or her current educational placement while the administrative process sorts out where the proper interim placement should be, then the deprivation is complete. A belated administrative decision upholding a student's stay-put rights provides no remedy

for the disruption already suffered by the student. Hence, as a practical matter, access to immediate interim relief is essential for the vindication of this particular IDEA right. *See Cole*, 954 F.Supp. at 1221 (noting that the stay-put provision "would be of little benefit if the plaintiffs are forced to proceed with administrative remedies in order to apply it"); *Carl B. v. Mundelei High Sch. Dist. 120 Bd. of Ed.*, 93 C 5304, 1993 WL 787899, at *2 (N.D.Ill. 1993) ("If the stay-put provision applies in this case, it is being violated each day [the student] is not in the program.... There is no administrative remedy for this violation.... This would mean that [the student] would be deprived of the benefits of the stay-put provision entirely."); *see also Digre v. Roseville Schs. Ind. Dist. No. 623*, 841 F.2d 245 (8th Cir.1988) (holding that federal courts have the authority to enter injunctions regarding the placement of a child during the pendency of state administrative proceedings).[1]

Having established that the district court did not err by exercising jurisdiction over plaintiffs' petition, we now turn to the substantive issues raised by Arlington. Arlington argues that the IDEA's stay-put provision cannot form the basis for an award of prospective relief if an "agreement" as to the current educational placement of the child is achieved by operation of law. The effect of the district court's ruling, according to defendant, is to circumvent the limits placed on the SRO's liability determination-as well as the procedural mechanisms that must be employed in resolving the school district's liability

for upcoming school years-thereby forcing school districts to assume financial responsibility for a student's future schooling indefinitely. Defendant further intimates that the sole purpose of § 1415(j) is to prevent local educational agencies from excluding disabled children from public schools, and therefore its protective features are not triggered by plaintiffs' unilateral decision to enroll their child in a private school. Finally, defendant contends that the prospective monetary relief sought is not an available remedy under the IDEA.

■ Since we heard oral argument in this case, the issue of whether § 1415(j) and 34 C.F.R. § 300.514(c) mandate the prospective relief awarded by the district court has been resolved by another panel of this Circuit. *See Bd. of Educ. v. Schutz*, 290 F.3d 476 (2d Cir.2002). In *Schutz*, the plaintiffs challenged the adequacy of an IEP that placed their disabled child in public school for the 1999–2000 term. As an SRO had determined previously that Kildonan was the appropriate educational placement for plaintiffs' child during the 1995 1997 terms, and as the student had remained at Kildonan in the intervening years, the parents sought interim relief requiring the school district to prospectively finance their child's education until the administrative proceedings reached their conclusion. The *Schutz* court, relying in part on *Murphy III*, held that "an [SRO's] order for reimbursement predicated on a finding that a proposed IEP is inappropriate for a child constitutes a change in the child's current educational placement for

---

1. Two courts within this Circuit have held that the failure of a plaintiff to exhaust remedies deprived the court of jurisdiction over claims arising under the IDEA's stay-put provisions. *See Schlude v. Northeast Cent. Sch. Dist.*, 892 F.Supp. 560, 565–68 (S.D.N.Y. 1995); *F.N. v. Bd. of Educ.*, 894 F.Supp. 605, 612–13 (E.D.N.Y.1995). In considering

whether an exception to the exhaustion requirement applied, the district courts held that, because the state agency eventually could order the stay-put relief sought, administrative procedures were neither inadequate nor futile. As explained above, we find this reasoning unpersuasive and now overturn these decisions.

purposes of interpreting the pendent placement provision, at § 1415(j), of the IDEA." *Id.* at 484. The *Schutz* court therefore ordered the school district to pay the costs of the student's tuition during the pendency of administrative proceedings. As *Schutz* is factually indistinguishable from the case at bar, we affirm the judgment of the district court and hold that Arlington is financially responsible for Joseph's tuition until such time as Joseph's placement is changed in accordance with the terms of the IDEA.

As an alternate basis for reversal, Arlington points to the fact that, although plaintiffs were represented by counsel on appeal, the Murphys appeared *pro se* before the district court. The Murphys were pursuing this action on behalf of their minor son. In this Circuit, a non-attorney parent is precluded from representing his or her child in federal court. *Cheung v. Youth Orchestra Foundation,* 906 F.2d 59, 61 (2d Cir.1990); *see also Pridgen v. Andresen,* 113 F.3d 391, 393 (2d Cir.1997) ("[A]ppearance *pro se* denotes (in law latin) appearance for one's self; so that a person ordinarily may not appear *pro se* the cause of another person or entity"). "The court has a duty to enforce the *Cheung* rule *sua sponte,* for the infant is always the ward of every court wherein his rights or property are brought into jeopardy, and is entitled to the most jealous care that no injustice be done to him." *Wenger v. Canastota Cent. Sch. Dist.,* 146 F.3d 123 (2d Cir.1998).

Although we agree that the district court should have ordered plaintiffs to obtain counsel, we do not find reversible error on these facts. The animating purpose behind the *Cheung* rule is to protect the interests of minor children by ensuring they receive adequate representation. 906 F.2d at 61. It is hardly in the best interest of Joseph Murphy to vacate an injunction that inures to his benefit so that he may re-litigate this issue below with licensed representation in order to re-secure a victory already obtained.

### CONCLUSION

For the reasons set forth above, we affirm the district court's grant of injunctive relief.