06-1466-cv
*Coleman v. Newburgh Enlarged City Sch. Dist.*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2006

(Argued: March 7, 2007          Decided: September 25, 2007)

Docket Nos. 06-1466-cv(L), 06-1732-cv(XAP)

--------------------------------------------------------x

ELZIE DESHAWN COLEMAN,

Plaintiff-Appellee-Cross-Appellant,

-- v. --

NEWBURGH ENLARGED CITY SCHOOL DISTRICT, PETER
COPELETTI, Individually and as Principal of Newburgh
Free Academy High School, and BOARD OF EDUCATION OF
THE CITY OF NEWBURGH SCHOOL DISTRICT,

Defendants-Appellants-Cross-Appellees.[*]

--------------------------------------------------------x

B e f o r e :  WINTER, WALKER and STRAUB, Circuit Judges.

Appeal from an order of the United States District Court for the Southern District of New York (Stephen C. Robinson, Judge) entered on February 28, 2006, awarding attorneys' fees and costs in favor of a disabled student as a prevailing party under the Individuals with Disabilities Education Act's fee-shifting provision, 20 U.S.C. § 1415(i)(3)(B).

---

[*]  We direct the clerk to alter the official caption to conform to the caption provided here.

REVERSED.

Judge Straub concurs in the judgment of the Court and files a separate concurring opinion.

STEPHEN BERGSTEIN, Bergstein & Ullrich, LLP, Chester, New York (Ostrer Rosenwasser, LLP, Chester, New York, Law Offices of Michael H. Sussman, Goshen, New York, on the brief) for plaintiff-appellee-cross-appellant.

MARK C. RUSHFIELD, Shaw & Perelson, LLP, Highland, New York <u>for defendants-appellants-cross-appellees</u>.

JOHN M. WALKER, JR., <u>Circuit Judge</u>:

In this case, a disabled child was subject to discipline by his school district that entitled him to several administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.A. § 1400 <u>et seq.</u>, but the exhaustion of which would likely have prohibited him from graduating with his class and, incidently, kept him from participating in extracurricular activities. The principal question we are presented with, simply stated, is whether, under the circumstances of this case, he should have been excused from exhausting his administrative remedies under the IDEA and allowed to go directly into federal court so that, if successful, he could enjoin the school district's disciplinary action without missing graduation.

Plaintiff Elzie Deshawn Coleman, a child with a disability,

2

filed an action alleging that Newburgh Enlarged City School District, Peter Copeletti, individually and as principal of Newburgh Free Academy High School ("NFA"), and the Board of Education of the City of Newburgh School District (collectively, "Defendants") violated his rights under the IDEA. In particular, Coleman challenged the disciplinary process that led to his suspension from NFA and moved for a preliminary injunction ordering Defendants to reinstate him immediately for the pendency of his administrative appeals. Defendants, in opposing the motion, argued that the district court lacked subject matter jurisdiction because Coleman had failed to exhaust the administrative remedies available to him under the IDEA. The district court for the Southern District of New York (Stephen C. Robinson, Judge) rejected Defendants' argument on the basis that exhaustion would be futile because Coleman was scheduled to graduate less than two months following the disciplinary hearing and granted Coleman's motion in an opinion and order dated May 17, 2004. See Coleman v. Newburgh Enlarged City Sch. Dist., 319 F. Supp. 2d 446 (S.D.N.Y. 2004). Soon thereafter, the district court awarded Coleman $28,431.52 in attorneys' fees as a prevailing party under the IDEA's fee-shifting provision, 20 U.S.C. § 1415(i)(3)(B).

On appeal, Defendants contend, inter alia, that the district court's award of attorneys' fees was improper because its

3

determination in Coleman's underlying action that exhaustion would be futile was error. We agree. The district court should have dismissed Coleman's complaint. We therefore reverse its award of attorneys' fees.

## BACKGROUND[2]

Coleman attended NFA as a disabled student pursuant to an individualized education program ("IEP") implemented under the IDEA. See 20 U.S.C. § 1414(d). On April 20, 2004, Coleman, an accomplished high school track athlete, was involved in an altercation with another student at NFA. He was removed from the school, arrested by the Newburgh Police Department,[3] and promptly suspended for five days pending a disciplinary hearing.

Upon prior notice, the disciplinary hearing was held on April 28, 2004 before a designated hearing officer, Edmund V. Caplicki, Jr. Caplicki found that (a) Coleman had engaged in a physical altercation with another student on school grounds; (b) a crowd grew as a result of that altercation; (c) a series of subsequent altercations broke out in the school between other students; and (d) intervention by the Newburgh Police Department was required. Based upon Caplicki's findings, Dr. Annette Saturnelli, the acting superintendent of schools, extended

---

[2] The facts are drawn principally from the district court's opinion and order of May 17, 2004. See Coleman, 319 F. Supp. 2d at 448-50.

[3] The record reveals only that these criminal charges were resolved on April 28, 2004, not the result.

4

Coleman's suspension for five more days pending the Committee on Special Education's ("CSE") hearing as to whether Coleman's conduct was a manifestation of his disability and the penalty phase of the disciplinary hearing before Caplicki.

On May 3, 2004, the CSE held its "manifestation hearing" and determined that Coleman's conduct was not attributable to his disability. From this determination, Coleman had a right to a series of administrative reviews — first to a due process hearing, see 20 U.S.C. § 1415(k)(3); 8 N.Y.C.R.R. § 201.11(a)(3), before an impartial hearing officer ("IHO") appointed by the local board of education, see 8 N.Y.C.R.R. § 200.5(j), and then to a second hearing before a state review officer ("SRO") of the New York Education Department, see 8 N.Y.C.R.R. § 200.5(k); see also 20 U.S.C. § 1415(g). Moreover, Coleman enjoyed the right to have the due process hearing conducted on an expedited basis. 20 U.S.C. § 1415(k)(4)(B) ("[T]he State or local educational agency shall arrange for an expedited hearing, which shall occur within 20 school days of the date the hearing is requested and shall result in a determination within 10 school days after the hearing."); 8 N.Y.C.R.R. § 201.11(c) ("An expedited due process hearing shall be completed within 15 business days of receipt of the request for a hearing," except in the event the IHO grants a specific extension of time at the request of a party, and a decision shall be rendered "within five business days after the

last hearing date, but in no event later than 45 calendar days after receipt of the request for a hearing, without exceptions or extensions.").[4]  But these administrative reviews, as it turns out, were never pursued.

Caplicki then heard the penalty phase of the disciplinary hearing and, on May 4, 2004, issued a written report and recommendation (the "Report and Recommendation") that Coleman be (a) suspended for the balance of the 2003-2004 school year with the opportunity to receive home tutoring and instruction; (b) allowed to attend 2004 summer school and return to school for the 2004-2005 school year if additional credits were needed to earn his high school diploma; and (c) placed on probationary status if he attended the summer program or returned to school during the 2004-2005 school year.  The same day, Dr. Saturnelli wrote a letter to Coleman in which she adopted the Report and Recommendation in full and ordered that Coleman be suspended from school for the remainder of the 2003-2004 school year and receive

---

[4]    As noted, an appeal from the impartial hearing officer's decision to a state review officer may be taken.  Except in the event the state review officer grants a specific extension of time at the request of a party, a final decision must be reached "not later than 30 days after the receipt of a request for a review."  8 N.Y.C.R.R. § 200.5(k)(2).

his IEP in an interim alternative education setting ("IAES").[5]

Coleman sued Defendants in New York State Supreme Court on April 30, 2004. His complaint sought a temporary restraining order to allow him to return to classes at NFA and participate in extracurricular activities. Defendants removed Coleman's action to federal court. On May 6, Coleman renewed his request for a temporary restraining order and/or preliminary injunction, and the district court heard argument.

Also on May 6, Coleman appealed Dr. Saturnelli's guilt and penalty decisions to the Board of Education. The Board upheld the actions of Dr. Saturnelli and rejected Coleman's appeal to that body in its entirety. Coleman's counsel reported this development to the district court on May 11.

Defendants moved to dismiss Coleman's complaint on the basis that the district court lacked subject matter jurisdiction because Coleman had failed to exhaust all available administrative remedies including, for instance, appealing further to an IHO and then to an SRO. The district court found that it had jurisdiction over the litigation because exhaustion would be futile under the circumstances — namely, that before Coleman could fully exhaust, he would miss graduating with his

---

[5] The IAES services, which the Defendants claim they have offered Coleman, include 5 hours of home teaching daily (2 hours for English, 2 hours for Science, 1 hour for Economics) and 1 hour with a prescriptive learning resource special education teacher. Coleman, 319 F. Supp. 2d at 449 n.5.

class and, incidentally, participating in extracurricular activities. The district court then granted Coleman's motion for a preliminary injunction and ordered that he "immediately be reinstated at NFA and that he be allowed to attend classes and to participate in extracurricular activities." Coleman, 319 F. Supp. 2d at 457. Defendants appealed to this court and sought an emergency stay. On June 3, 2004, a panel of this court denied the stay, finding that Defendants failed to demonstrate irreparable harm. Within a few weeks of that decision, on June 24, Coleman graduated from NFA. It followed that Defendants, by stipulation and agreement with Coleman, withdrew their appeal as moot on July 7, 2004.

On July 12, days after Defendants' decision to withdraw their appeal, Coleman moved in the district court pursuant to 20 U.S.C. § 1415(i)(3)(B) for attorneys' fees in the amount of $54,218.03. Defendants opposed the application through a Fed. R. Civ. P. 12(b)(1) and (6) cross-motion to dismiss the complaint. The district court awarded Coleman $28,431.52 in attorneys' fees. This appeal followed.

**DISCUSSION**

Defendants argue that the district court erred in awarding attorneys' fees to Coleman because the complaint should have been dismissed for lack of subject matter jurisdiction based on a failure to exhaust administrative remedies. See, e.g., McGinty

8

v. New York, 251 F.3d 84, 100 (2d Cir. 2001) ("It . . . follows that where we lack subject matter jurisdiction, we also lack jurisdiction to award attorney's fees.").

**I.    The Jurisdictional Label**

Before turning to the merits, we pause to consider whether this appeal should be characterized as one involving jurisdictional limitations.

The IDEA's so-called exhaustion requirement is grounded in 20 U.S.C. § 1415(i)(2)(A), which provides a cause of action to those parties who are "aggrieved" by a "final" decision of either an impartial due process hearing officer, if the state does not have an appeals process, or the state educational agency, if it does.  We have routinely stated that the IDEA's exhaustion requirement is jurisdictional.  See, e.g., Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 483 (2d Cir. 2002) ("A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction."); Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199 (2d Cir. 2002) ("The plaintiff's failure to exhaust administrative remedies ordinarily deprives this court of subject matter jurisdiction over any IDEA claims.").

Recently, however, the Supreme Court has admonished lower courts to more carefully distinguish between jurisdictional rules and mandatory claims-processing rules, see Eberhart v. United

9

_States_, 546 U.S. 12, 16 (2005) (per curiam) ("'Clarity would be facilitated' . . . 'if courts and litigants used the label "jurisdictional" not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.'") (quoting _Kontrick v. Ryan_, 540 U.S. 443, 455 (2004)), the latter being subject to waiver and forfeiture, _see_ _id._ at 19 ("These claim-processing rules thus assure relief to a party properly raising them, but do not compel the same result if the party forfeits them."). After _Kontrick_ and _Eberhart_, we have been equivocal in our discussion of the IDEA's exhaustion requirement, acknowledging our statement in _Polera_ that the failure to "exhaust IDEA administrative remedies deprive[s][a] court of subject matter jurisdiction" but also referring to the IDEA's exhaustion requirements as the defendants' "non-exhaustion defense," in a case where we contemplated, but did not decide, whether those requirements are subject to waiver. _Handberry v. Thompson_, 436 F.3d 52, 60 (2d Cir. 2006) (citing _Polera_, 288 F.3d at 488-90); _see also_ _Paese v. Hartford Life Accident Ins. Co._, 449 F.3d 435, 444 n.2 (2d Cir. 2006) (stating that we have yet to reach a clear conclusion on whether the failure to exhaust administrative remedies under the IDEA is an affirmative defense, not a jurisdictional bar) (citing

_Handberry_, 436 F.3d at 60).[6]

But we are not forced to decided whether our precedent, which labels the IDEA's exhaustion requirement as a rule affecting subject matter jurisdiction rather than an "inflexible claim-processing" rule that may be waived or forfeited, remains good law after _Kontrick_ and _Eberhart_ because there can be no claim of waiver or forfeiture here. Defendants have consistently challenged the district court's exhaustion ruling throughout this litigation. We took a similar position in _United States v. Moreno-Rivera_, 472 F.3d 49, 50 n.2 (2d Cir. 2006) (per curiam), where we noted that _Kontrick_ and _Eberhart_ cast doubt on our precedent that considers the time limits of Fed. R. App. P. 4(b) as jurisdictional, but declined to revisit the question because the government had properly raised the untimely nature of defendant's notice of appeal in its motion to dismiss.[7] In _Zhong v. United States Dep't of Justice_, 480 F.3d 104, 107 (2d Cir. 2007), however, we observed that _Eberhart_ provided reason "for us to treat as not jurisdictional, though mandatory (and hence

---

[6] We note that the Seventh Circuit has recently reaffirmed its conclusion that the IDEA's exhaustion requirement is only an affirmative defense, not a jurisdictional bar, because "'lack of exhaustion usually is waivable.'" _Mosely v. Bd. of Educ._, 434 F.3d 527, 532-33 (7th Cir. 2006) (quoting _Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68_, 98 F.3d 989, 991 (7th Cir. 1996)).

[7] The Supreme Court recently answered affirmatively the related question of whether the time limit in Rule 4(a)(6) — which in civil cases allows district courts to reopen Rule 4(a)(1)(A)'s 30-day filing period by 14 days — is jurisdictional. _Bowles v. Russell_, 127 S. Ct. 2360, 2366 (2007).

11

waivable) the requirement of issue exhaustion" provided in 8 U.S.C. § 1252(d) and decided to so hold because the question was "determinative of the asylum case before us."[8]

That Defendants are challenging the district court's exhaustion determination by way of an appeal from an award of attorneys' fees does not impede our review of the issue. The IDEA's fee-shifting provision "limits judicial discretion to award attorney's fees to 'any action or proceeding brought under this subsection.'" W.G. v. Senatore, 18 F.3d 60, 64-65 (2d Cir. 1994) (quoting 20 U.S.C. § 1415(e)(4)(B), the predecessor to § 1415(i)(3)(B)). The phrase "brought under this subsection" encompasses the administrative procedures and civil actions provided in 20 U.S.C. § 1415(i) and requires an independent examination of whether the underlying action was properly brought, which in turn requires an assessment of whether the

---

[8] That Defendants were not able to attack the district court's exhaustion determination on direct appeal does not amount to waiver or forfeiture. Defendants stipulated to a dismissal of their appeal because Coleman graduated from NFA. Contrary to Coleman's suggestion, they could not have maintained their appeal on the basis that an award of attorneys' fees might possibly be forthcoming. We surely would have dismissed such an appeal as moot rather than issue an advisory opinion. See, e.g., ABC, Inc. v. Stewart, 360 F.3d 90, 97 (2d Cir. 2004) ("[U]nder the mootness doctrine, if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, we must dismiss the case, rather than issue an advisory opinion.") (internal quotation marks omitted). Thus, there was no relief available to Defendants when they voluntarily withdrew their appeal because at that time Coleman had not moved for attorneys' fees and it was not certain that he would do so.

12

district court's exhaustion determination was proper. We now turn to that question.

**II. Exhaustion**

"It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court . . . ." J.S. v. Attica Cent. Sch., 386 F.3d 107, 112 (2d Cir. 2004). However, the exhaustion requirement does not apply "in situations in which exhaustion would be futile." Polera, 288 F.3d at 488 (internal quotation omitted). To show futility, a plaintiff must demonstrate that "adequate remedies are not reasonably available" or that "the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process." J.G. v. Bd. of Educ. of Rochester City Sch. Dist., 830 F.2d 444, 447 (2d Cir. 1987); Heldman v. Sobol, 962 F.2d 148, 158 (2d Cir. 1992). For relief to be adequate, it must "give realistic protection to the claimed right." Murphy, 297 F.3d at 199 (internal quotation marks omitted). The burden of demonstrating futility rests with the party seeking to avoid the exhaustion requirement. Polera, 288 F.3d at 489 n.8.

The district court found that Coleman had established that exhaustion would be futile. The district court reasoned that Coleman would not have been able to exhaust the full administrative processes available — review of the CSE's adverse

13

manifestation determination by an IHO and an SRO — before the school year ended. As a result, Coleman would have missed his graduation and been unable to participate in extracurricular activities, including track and field events. The district court believed that these circumstances meant that there were no adequate administrative remedies available.

We do not agree that the administrative processes available to Coleman left him without an adequate remedy. The district court erred by focusing on the detriment Coleman would have suffered on account of being removed from NFA and placed in an IAES until he graduated. The sole question was whether he had a right, under the IDEA, to be reinstated at NFA while the allegedly erroneous manifestation determination was reviewed. He did not.

To be sure, 20 U.S.C. § 1415(k)(1)(F)(iii) establishes a disabled child's right to be returned to the school from which he or she was removed if the behavior that gave rise to the child's violation of the school's code of conduct is determined to be a manifestation of the child's disability. And the procedural safeguards provided in the IDEA entitle "[t]he parent of a child who disagrees with . . . the manifestation determination . . . [to] a hearing," § 1415(k)(3)(A); see 8 N.Y.C.R.R. § 201.11(a)(3), conducted on an "expedited" basis, § 1415(k)(4)(B); 8 N.Y.C.R.R. § 201.11(c). However, an aggrieved child does not

14

have the right to return to the school from which he or she has been removed while the administrative and judicial review process is underway. Cf. Murphy, 297 F.3d at 199 (Section 1415(j) — the "stay-put" provision — establishes a student's right to a stable learning environment during administrative and judicial review and, thus, if that right is threatened, "an immediate appeal is necessary to give realistic protection to [it]") (internal quotation marks omitted). Congress specifically spoke to this issue in § 1415(k)(4)(A), stating: "When an appeal [of a manifestation determination] has been requested . . . the child shall remain in the interim alternative educational setting pending the decision of the hearing officer . . . ." (Emphasis added). Congress could have chosen, but did not, to permit the child to remain in his original school. In sum, while Coleman had a right not to be removed from NFA based on an erroneous determination of no manifestation, he had no right to reinstatement while that determination was being reviewed.

As a broader matter, we are not persuaded that a disabled child has a right, under the IDEA, to graduate on a date certain or from a particular educational institution — specifically, the child's original school rather than an IAES. The IDEA's mandate is that all disabled children be given a "free appropriate public education." 20 U.S.C. § 1412(a)(1)(A); see Bd. of Educ. v. Rowley, 458 U.S. 176, 181 (1982) (interpreting the predecessor

15

statute to the IDEA).  In fulfilling this mandate, there are no general time and manner requirements placed on the states other than those provided in the IDEA and created by the states.  The State of New York has administrative processes consistent with these requirements.  See Coleman, 319 F. Supp. 2d at 450-51 (describing administrative processes available to Coleman); see also Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 123 (2d Cir. 1998) (describing the system New York has developed to meet its obligations under the IDEA and to implement its own policies regarding the education of disabled children).  That the carrying out of these administrative processes may take some time, and in certain circumstances result in the child graduating in an IAES after his anticipated graduation date, does not equate to an inadequate remedy.  Cf. Polera, 288 F.3d at 488 ("[R]elief available . . . mean[s] relief for the events, condition, or consequences of which the person complains, [even if] not necessarily relief of the kind the person prefers.") (internal quotation marks omitted).

Coleman argues that because he was set to graduate in a few weeks, his case presented an "emergency situation" such that exhaustion would be futile.  Coleman's reference to the term "emergency situation" finds its origins in the IDEA's legislative history.  The House Report to the IDEA's predecessor defined the parameters of the futility exception to include complaints that

16

"an emergency situation exists (e.g., the failure to take immediate action will adversely affect a child's mental or physical health)."  H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985) (emphasis added).

Coleman's "emergency situation" argument is unpersuasive here.  In the first place, it fails to address that the relief Coleman sought — graduating with his class — is not necessary to prevent the deprivation of a right protected under the IDEA.  In any event, there was no showing that the delay that would have occurred in exhausting the administrative processes, which may have entailed his missing graduation on June 24 and participation in certain school activities, would have affected Coleman's mental or physical health; he does not even suggest as much. Acceptance of Coleman's argument could lead district courts, following the suspension of a disabled student after an adverse manifestation determination, to bypass the IDEA's exhaustion requirement altogether because any administrative remedy, while the student was attending the IAES, would be insufficient to correct the "harm" inflicted by missing out on such things as normal classroom time and extracurricular activities at the disabled student's regular school.  Such a sweeping exception would undermine the IDEA's statutory mandate for exhaustion.  See Polera, 288 F.3d at 488.  This is why other circuits have stated that the emergency situation exception "'is to be sparingly

17

invoked.'" Rose v. Yeaw, 214 F.3d 206, 212 (1st Cir. 2000) (quoting Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 779 (3d Cir. 1994)); see also Komninos, 13 F.3d at 779 ("[M]ere allegations by plaintiffs of irreversible harm will not be enough to excuse the completion of administrative proceedings. Plaintiffs must provide a sufficient preliminary showing that the child will suffer serious and irreversible mental or physical damage (e.g., irremediable intellectual regression) before the administrative process may be circumvented."). That Coleman was a superior athlete who was on the verge of graduating does not make his claim of an emergency situation more compelling.

Accordingly, we conclude that, because the district court should have dismissed Coleman's complaint for failure to exhaust his administrative remedies and erred in not doing so, it was also error for the district court to award Coleman attorneys' fees.

**CONCLUSION**

For the foregoing reasons, we reverse the district court's award of attorneys' fees.

18

STRAUB, *Circuit Judge*, concurring:

I agree fully with the Court's opinion. I write separately to emphasize that I do not believe either *Kontrick v. Ryan*, 540 U.S. 443 (2004), or *Eberhart v. United States*, 546 U.S. 12 (2005) (per curiam), raises any doubt as to our well-established precedent that federal courts lack subject matter jurisdiction over IDEA claims that are unexhausted and that do not meet one of the limited exceptions to the statute's exhaustion requirement.

As the Court notes, *supra* at 9, we have long treated the IDEA's exhaustion requirement as jurisdictional. *See*, *e.g.*, *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002); *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002); *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 789 (2d Cir. 2002); *W.G. v. Senatore*, 18 F.3d 60, 64-65 (2d Cir. 1994). The vast majority of other circuits to have considered the issue have done so as well. *See*, *e.g.*, *Ellenberg v. New Mexico Military Inst.*, 478 F.3d 1262, 1279 (10th Cir. 2007); *Fliess v. Washoe County Sch. Dist.*, 90 Fed. Appx. 240, 242 (9th Cir. 2004) (unpublished decision); *Babicz v. Sch. Bd. of Broward County*, 135 F.3d 1420, 1421 (11th Cir. 1998) (per curiam); *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1095 (1st Cir. 1989); *but see Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527 (7th Cir. 2006). This is for good reason: as explained more fully below, the IDEA, with few exceptions, does not provide prospective plaintiffs with a federal cause of action until the state review process has been completed. *See* 20 U.S.C. §§ 1415(i)(1) & (i)(2).

Neither *Kontrick* nor *Eberhart* calls this considerable body of case law into question. In *Kontrick*, the Supreme Court held that in bankruptcy proceedings, the 60-day time limit pursuant to Bankruptcy Rule 4004(a) for a creditor to file a complaint objecting to the debtor's discharge

19

is not jurisdictional, but rather is a judicially-created "claim-processing rule" that is subject to waiver and forfeiture. *See* 540 U.S. at 454-56. The Court reasoned that under the bankruptcy laws, Congress provided that "objections to discharges" are "[c]ore proceedings" that are clearly within the jurisdiction of the federal courts, and that no statute curtails that jurisdiction by specifying a time limit for filing a complaint objecting to discharge. *Id.* at 453-54 (quoting 28 U.S.C. § 157(b)(2)(J)). Thus, Rule 4004(a)'s 60-day time limit does not affect "the classes of cases . . . falling within a court's adjudicatory authority," *i.e.*, subject matter jurisdiction. *Id.* at 455.

In *Eberhart*, the Supreme Court followed *Kontrick* in holding that the seven-day time limit for a defendant to file a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 was not jurisdictional. *See* 546 U.S. at 13. The Court explained that Rule 33, like Bankruptcy Rule 4004(a), is nothing more than an "'emphatic time prescription[] in [a] rule[] of court'" that regulates motion practice in an action – a federal criminal prosecution – that district courts already possess subject matter jurisdiction to adjudicate. *Id.* at 18 (quoting *Kontrick*, 540 U.S. at 454). In reaching its conclusion, the Court stressed that "'[c]larity would be facilitated' . . . . 'if courts and litigants used the label "jurisdictional" not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.'" *Id.* at 16 (quoting *Kontrick*, 540 U.S. at 455).

*Kontrick* and *Eberhart* thus counsel that where Congress has provided courts with jurisdiction over the claim at issue, judicial rules cannot be relied upon to abdicate that jurisdiction. *See Kontrick*, 540 U.S. at 452-53 ("Only Congress may determine a lower federal

20

court's subject-matter jurisdiction. . . . '[I]t is axiomatic' that [judicially-created] rules 'do not create or withdraw federal jurisdiction.'" (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370 (1978)). In both cases, Congress had clearly provided jurisdiction over the underlying actions – an objection to discharge and a federal criminal prosecution – and the time limitations that affected the processing of those actions were not dictated by statute in a way that could affect the existence of the underlying claims, but rather were a product of judicial rulemaking. This, then, is the critical distinction between a claim-processing rule and a jurisdictional bar: a claim-processing rule does not affect the existence of the underlying claim. *See also Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 445 (2d Cir. 2006) (noting that an exhaustion requirement is not jurisdictional "unless the failure to exhaust administrative remedies is essential to the existence of the claim, or to ripeness, and therefore to the presence of an Article III case or controversy") (internal citations and quotation marks omitted).

We have applied this principle in the exhaustion context in several recent cases. In *Richardson v. Goord*, 347 F.3d 431 (2d Cir. 2003) (per curiam), we held that the exhaustion requirement in the Prison Litigation Reform Act ("PLRA") is a claim-processing rule because the requirement affects a prisoner's preexisting claims – brought under different statutes such as 42 U.S.C. § 1983 – and thus exhaustion is not "essential to the existence of the claim." *Id.* at 434. Similarly, in *Paese v. Hartford Life & Accident Insurance Co.*, we found that the failure to exhaust administrative remedies under the Employee Retirement Income Security Act ("ERISA") does not deprive courts of subject matter jurisdiction (despite language in prior cases in this Circuit suggesting otherwise) because, *inter alia*, ERISA "contains no statutory exhaustion requirement"; rather, the requirement "is purely a judge-made concept" that "ha[s] little or no

21

bearing on the existence of a claim." 449 F.3d at 443, 445. In *Zhong v. United States Department of Justice*, 480 F.3d 104, 107 (2d Cir. 2006), we noted that the converse was true for exhaustion of administrative remedies in the immigration context. We explained that the immigration laws specify that courts of appeal may review only a "final order of removal," 8 U.S.C. § 1252(d), which is a "clearly jurisdictional requirement" requiring that asylum cases be "brought to the Executive Office for Immigration Review (i.e., an IJ and the BIA) before they can be considered by courts of appeal." *Zhong*, 480 F.3d at 107. We went on to hold that exhaustion of *issues* in the immigration context is not a jurisdictional requirement because issue exhaustion, unlike exhaustion of remedies, is merely a "court-imposed" rule not expressly mandated by the immigration laws. *Id.* at 115-18.

Applied here, these principles leave no doubt that the IDEA's exhaustion requirement is jurisdictional because it directly affects the existence of a plaintiff's underlying claim. The IDEA creates a series of procedural protections for disabled children as a means to ensure their "access to a free appropriate public education." 20 U.S.C. § 1400(c)(3); *see generally Heldman v. Sobel*, 962 F.2d 148, 150-52 (2d Cir. 1992). For disabled students such as Coleman who are removed from school for disciplinary reasons, these protections include, *inter alia*, a right to a manifestation hearing to determine whether the student's conduct was caused by or directly related to his disability, 20 U.S.C. § 1415(k)(1)(E); a right to an expedited appeal of the manifestation decision before an impartial hearing officer, 20 U.S.C. §§ 1415(k)(3), (k)(4)(B) & (f)(1)(A); and a right to appeal that decision before a state review officer, 20 U.S.C. § 1415(g). But the IDEA does not permit students or their parents to sue the moment they are dissatisfied with the outcome of any of these proceedings. Rather, the IDEA grants prospective plaintiffs a

22

federal (or state) cause of action only at the end of the administrative process: to parties who are "aggrieved" by the "final" decision of a state educational agency, or, if the agency does not provide an internal avenue of appeal, by the final decision of the impartial hearing officer. *See* 20 U.S.C. §§ 1415(i)(1) & (i)(2). Thus, by the explicit terms of the statute, a party like Coleman has the right to sue only after the state process has reached a final decision, just as an asylum seeker must first appeal an immigration judge's adverse decision to the Board of Immigration Appeals before seeking relief in federal court. Courts, of course, do not possess jurisdiction over claims that Congress has specified do not yet exist. *See*, *e.g.*, *Bowles v. Russell*, 127 S. Ct. 2360, 2365 (2007) ("Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider. Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them.").[1]

---

[1]    The above analysis applies to exhaustion of remedies where a plaintiff's claim is brought directly under the IDEA. The IDEA contains a separate provision requiring plaintiffs who bring actions under other statutes – such as the Americans with Disabilities Act – but who are seeking the kinds of relief available under the IDEA, to also exhaust administrative remedies before bringing suit:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l). This provision is much more akin to the exhaustion requirement of the PLRA, in that it requires exhaustion before bringing causes of action that exist independently; thus, exhaustion under this provision may indeed be a claim-processing rule and not jurisdictional. *Cf. Richardson*, 347 F.3d at 434 (noting that the PLRA "lacks the sweeping and direct language that would indicate a jurisdictional bar rather than a mere codification of administrative exhaustion requirements") (internal citation and quotation marks omitted); *but see Hope v. Cortines*, 69 F.3d 687, 688 (2d Cir. 1995) (holding that section 1415(l) of the IDEA is jurisdictional). This issue does not arise here because Coleman's only federal claims are

The Seventh Circuit – the only Court of Appeals to hold that the IDEA's exhaustion requirement is not jurisdictional – reasoned that "lack of exhaustion usually is waivable, as lack of jurisdiction is not." *Mosely*, 434 F.3d at 533 (internal citation and quotation marks omitted). For that proposition, the Seventh Circuit cites *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 991 (7th Cir. 1996), which in turn cites *Weinberger v. Salfi*, 422 U.S. 749, 766-67 (1975). *Weinberger*, however, supports the conclusion that the IDEA's exhaustion requirement is jurisdictional. In that case, the Supreme Court held that because the Social Security Act ("SSA") grants individuals a right to a "civil action" only upon the "final decision of the Commissioner of Social Security made after a hearing to which he was a party," 42 U.S.C. § 405(g), the requirement that a "final decision" be reached "is a statutorily specified jurisdictional prerequisite." *Weinberger*, 422 U.S. at 766. Accordingly, the Court found that the district court lacked jurisdiction over the claims of the unnamed class members in the case, who had not filed applications with the Secretary and thus were not appealing from "any decision [of the Secretary], final or otherwise." *Id.* at 764. The named plaintiffs, however, had "fully presented their claims for benefits to their district Social Security Office and, upon denial, to the Regional Office for reconsideration," and were raising purely constitutional claims that could benefit from no further exhaustion. *Id.* at 764-65. The Supreme Court found that jurisdiction existed over these claims – even though the plaintiffs had not pursued all internal avenues of appeal – because (1) the term "final decision" in the SSA "is not only left undefined by the Act, but its meaning is left to the Secretary [of Health, Education, and Welfare] to flesh out by regulation"; and (2) the Secretary did not object to the named plaintiffs' failure to fully exhaust all administrative

brought exclusively under the IDEA.

avenues and in so doing determined "that for the purposes of this litigation the reconsideration determination is 'final.'" *Id.* at 766-67. *Weinberger* thus does not support the contention that exhaustion requirements are generally waivable; rather, because of the SSA's "particular administrative scheme," *id.* at 765, complete exhaustion of social security claims is not required so long as a "final decision" by the Secretary has been reached. *Id.* at 767.

In *Mathews v. Eldridge*, 424 U.S. 319, 328-30 (1976), the Supreme Court expanded on *Weinberger* and clarified that "the [SSA's] requirement that a claim for benefits shall have been presented to the Secretary . . . is an essential and distinct precondition for . . . jurisdiction," whereas the "requirement that the administrative remedies prescribed by the Secretary be exhausted" is waivable, either by the Secretary, or in certain limited circumstances, by the courts. *See also City of New York v. Heckler*, 742 F.2d 729, 734 (2d Cir. 1984) (noting that the SSA's "final decision" requirement "consist[s] of two elements – (i) the 'jurisdictional,' non-waivable requirement that a claim for benefits has been presented to the Secretary and (ii) the 'waivable' requirement that the administrative remedies prescribed by the Secretary have been exhausted.").

This distinction in SSA cases between "presentment" and "exhaustion" is inapplicable, and indeed would be incoherent, in the IDEA context. Unlike the SSA, which does not define the requisite "final decision" for jurisdictional purposes, *see Weinberger*, 422 U.S. at 766, the IDEA explicitly delineates what is required before a plaintiff may bring a federal or state action: he or she must be "aggrieved by the findings and decision" of the "State educational agency," or, if the state does not provide for an appeal to that agency, a plaintiff can file suit to challenge the decision reached at the "[i]mpartial due process hearing." 20 U.S.C. §§ 1415(i), (f), (g) & (k). These provisions are unambiguous and do not leave open the possibility that the "final decision"

for jurisdictional purposes can mean anything other than that of the state educational agency or the impartial due process hearing officer. Moreover, the administrative process in social security cases occurs under a single umbrella, so it can fairly be said that an initial challenge to the termination of benefits has been "presented" to the Secretary, and a decision to uphold a termination of benefits can fairly be construed as a "final decision" for jurisdictional purposes. Under the IDEA, on the other hand, the state is ultimately responsible for adhering to the statute's myriad requirements (in order to receive federal funding), but the first stages in the hearing process occur at the local level. Thus, presenting a claim, for example, to the superintendent of schools, or to the local official who conducts the manifestation hearing, is not the equivalent of presenting a claim to the state itself. As a result, permitting waiver of the IDEA's exhaustion requirement would defeat one of its fundamental purposes: to give states the opportunity to correct the errors of their localities. *See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487 (2d Cir. 2002).

The IDEA's exhaustion requirement is unique in one respect: it allows for some limited exceptions, whereas most jurisdictional rules do not. *See Bowles*, 127 S. Ct. at 2366 (noting that courts "lack[] authority to create equitable exceptions to jurisdictional requirements"). Exhaustion of IDEA claims is not required "if (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002) (citing *Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir. 1987)). Such exceptions are typically recognized only when exhaustion is a judicially-created

26

claim-processing rule. *See Zhong*, 461 F.3d at 119 ("In contrast to statutory exhaustion, . . . judicial exhaustion permits courts, in their discretion, to waive administrative exhaustion under certain circumstances.") (internal citation and quotation marks omitted). However, the exceptions to the IDEA's exhaustion requirement derive not from judicial doctrine, but from the statute's unambiguous legislative history. *See Heldman*, 962 F.2d at 158-59 & n.11 (explaining that the three recognized exceptions to exhaustion of IDEA claims – futility, a challenge to a policy of general applicability, and inadequacy of relief – derive directly from the legislative history of the Education for All Handicapped Children Act of 1975 and the Handicapped Children's Protection Act of 1986, the precursors to the IDEA). Thus, these are not judicially-created exceptions that ordinarily would signify a claim-processing rule; rather, they are, effectively, statutory exceptions that courts must follow to carry out the clear intent of Congress. Accordingly, district courts possess jurisdiction over unexhausted claims only when one or more of these exceptions applies. Any other conclusion would violate the principle that "[o]nly Congress may determine a lower federal court's subject matter jurisdiction." *Kontrick*, 540 U.S. at 453.

I therefore agree with the Court that Coleman is not entitled to attorneys' fees because he failed to exhaust his administrative remedies. Indeed, he filed his lawsuit even before his manifestation hearing. I think it is also clear, however, that the District Court did not possess subject matter jurisdiction over Coleman's claims and thus should have dismissed his lawsuit at the outset.

27